CAHILL AND SMITH *v.* THE KALAMAZOO MUTUAL INSU-
RANCE COMPANY.

The circuit court cannot compel a plaintiff to become nonsuit. He has always a right, if he chooses, to go to the jury with his case.

Production of the charter, and proof of acts of *user* under it, is sufficient to establish corporate existence, where the charter confers corporate powers *in presenti,* and unconditionally, and does not make the right to their exercise depend upon any thing to be done *in futuro.* In such cases no proof of organization under the charter is necessary.[*]

Written applications to an incorporated insurance company for policies, policies issued thereon, and also the official bonds of the officers of the company, are admissible in evidence for the purpose of proving *user.*

One who effects an insurance with an incorporated company, by the terms of whose charter he, by so doing, becomes a member of the corporate body, and, on receiving his policy, gives a premium note in consideration therefor, payable to the company by its corporate name, is estopped from denying the corporate existence of the company, in an action against him on the note. *Semble.*[†]

Parol evidence is admissible, in such action, to prove that A, who signed the policy as president, was acting president of the company, and that the policy was therefore valid and binding upon the company, and a good consideration for the note.[‡]

A corporation is bound by the acts of its officers *de facto;* and it need not be shown that they were regularly elected, in order to make their acts binding upon the corporation. *Semble.*

The charter of a corporation empowered the president and directors to make by-laws. *Held,* that the power might be exercised by the president and a majority only of the directors.

There is no variance between an allegation that the *president and directors* (naming all of them) of a corporation, made certain by-laws, and proof that they were adopted by the president, and a majority only of the directors.

The charter of a mutual insurance company empowered the president and directors to adopt such by-laws and regulations for the transaction of the business of the company as they might deem expedient. In the exercise of this power a by-law was adopted to the effect that, if any person, who had become insured in the com-

[*] See *Farmers and Mechanics' Bank* v. *Troy City Bank*, 1 Doug. Mich. R. 464.
[†] See *Owen* v. *Bank of Sandstone*, Post. p. 134, note.
[‡] See *Scott* v. *Young Men's Society*, 1 Doug. Mich. R. 119, 152.

pany, and, on receiving a policy for such insurance, had executed and delivered to the company his premium note, promising to pay a certain specified sum, in such portions and at such times as the directors of the company might, agreeably to their act of incorporation, require, and had thereby become liable to pay his portion of all losses by fire, of property insured in the company, and of all expenses of the company, should neglect to pay any sum assessed upon his premium note, for his proportion of such losses and expenses, for the space of thirty days after publication of notice of such assessment, in such case, the directors of the company might sue for and recover the whole amount of such premium note;—the money, when collected, to remain in the treasury of the company, subject to the payment of such losses and expenses as had accrued, or might afterwards accrue, and the balance, if any, to be returned to the insured, on demand, after the expiration of his policy. *Held,* that the directors had power to adopt this by-law, and that it formed a part of the contract of a person effecting insurance with the company, knowing that it was in force.

It seems that a corporation is not dissolved by the omission to elect directors under the charter; but that the old directors continue in office until others are elected in their stead.

In an action by a corporation, the defendant, for the purpose of showing the corporation dissolved, and therefore not competent to maintain the action, offered to prove the continued insolvency of the corporation, and the failure to elect directors under the charter, for a long time previous to the commencement of the suit. *Held,* that the evidence was inadmissible; for that a cause of forfeiture of corporate rights could not be taken advantage of collaterally, but only by a direct proceeding for that purpose against the corporation.

ERROR to Kalamazoo Circuit Court. This was an action of assumpsit, brought by the Kalamazoo Mutual Insurance Company, as a corporation, upon the following instrument, executed by the defendants below, and commonly designated as a premium or deposite note:

$32.04                    Kalamazoo, Aug. 14, 1840.

For value received in policy No. 831, dated 14th Aug. 1840, issued by the Kalamazoo Mutual Insurance Company, we promise to pay the company, or their treasurer for the time being, thirty-two dollars and four cents, in such portions, and at such times, as the directors of said company shall, agreeably to their act of incorporation, require.                    *Abraham Cahill,*
                    *Albert A. Smith.*

The declaration alleged that the Kalamazoo Mutual Insurance Company was a body politic and corporate, vested with the power of making contracts for insurance against losses by fire, &c., and also, to adopt, by their president and directors, such by-laws and regulations, for the transaction of the business of the company, as such president and directors might deem expedient;—that, January 24, 1840, Abraham Edwards, the then president, and Luther H. Trask, *and eleven others, (naming them,)* the then directors of the company, adopted certain by-laws and regulations of said company, particularly set forth, and among others, the following, viz :

" Art. II.   Sec. 1.   Every person who shall become a member of this company by effecting insurance therein, shall, before he receives his policy, deposit his promissory note with surety, to be approved by the directors, for such sum of money as shall be determined by the directors.   A part, not exceeding ten per cent of said note, shall be immediately paid, for the purpose of discharging the incidental expenses of the company, and the remainder of said deposite note shall be payable in part, or the whole, at any time when the directors shall deem the same requisite, for the payment of losses or other expenses, to be by them annually assessed : and, at the expiration of the term of insurance, the said note, or such part thereof as shall remain unpaid, after deducting all losses and expenses accruing during said term, shall be relinquished and given up to the signers thereof."

" Art. II.   Sec. 2.   Every member of this company shall be, and hereby is bound and obliged to pay his portion of all losses and expenses happening and accruing in and to said company : And if any member shall, for the space of thirty days after the publication of notice as herein after directed, neglect or refuse to pay the sum assessed upon him, her, or them, as his, her, or their proportion of any

loss as aforesaid, in such case the directors may sue for and recover the whole amount of his, her, or their deposite note or notes, with costs of suit; and the money thus collected, shall remain in the treasury of said company, subject to the payment of such losses and expenses as have accrued, or may thereafter accrue; and the balance, if any remain, shall be returned to the party from whom it was collected, on demand, after ninety days from the expiration of the term for which assurance was made."

Art. VI, Sec. 1, provided that "notice of assessments should be given by the secretary, by publication, in at least two of the newspapers printed in the state, three weeks successively,—the last publication to be not less than thirty days from the time fixed for the payment."

The declaration then alleged, that on the 14th day of August, 1840, at, &c. Cahill, (one of the defendants below,) well knowing the premises, made application to the company to obtain an insurance against loss or damage by fire, on his dwelling house, which was approved; that he promised to pay to the company, or to the treasurer thereof, in consideration for a policy of insurance on said dwelling house, against loss or damage by fire, for a sum not exceeding $534, and for the term of six years thereafter, the sum of $32.04, in such portions, and at such times as the directors of the company might, agreeably to their act of incorporation, require; that the company then and there executed and delivered to Cahill their policy for such insurance, the contents whereof were particularly set forth; that, in consideration thereof, the defendants then and there executed and delivered to the company, the premium note above set forth; that on the 3d day of March, 1841, it having become necessary for the purpose of paying losses sustained by the company, by the injury and destruction by fire of property insured therein, and also for the purpose of defraying the expenses of the

company, the directors assessed the defendants below to pay on their premium note, the sum of ninety-six cents; that notice of this assessment was duly published in the manner therein particularly set forth, being in accordance with the requirement of section 1, article VI, of the by-laws; and that the defendants neglected and refused, for the space of thirty days after publication of said notice, to pay said assessment: By reason whereof, and by force of the by-laws and regulations of the company, the defendants below became liable to pay to the company, the whole amount of said premium note; and in consideration of such liability, promised, &c.—The declaration also further averred, that, February 2, 1842, the directors of the company assessed the defendants to pay the further sum of $5.60 on said premium note; that notice of such assessment was duly published, and that the defendants below neglected and refused to pay the same for the space of thirty days after the publication of said notice: By reason whereof, &c.

The defendants below plead the general issue, accompanied with a notice of special matter to be introduced in evidence on the trial. The facts alleged in the notice will appear in the statement of the evidence offered in defence on the trial.

The cause was tried at the June term, 1842, of the Circuit Court, before the Hon. E. RANSOM, Presiding Judge.

On the trial, the plaintiffs below, to prove their corporate existence, read in evidence their act of incorporation, entitled, " An act to incorporate the Kalamazoo Mutual Insurance Company," approved March 7, 1834, (S. L. 1834, p. 21,) an act amendatory thereto, approved March 25, 1841, (S. L. 1841, p. 50,) and also an act to legalize the acts of said company, approved February 1, 1842, (S. L. 1842, p. 11.) Section one of the first men-

Cahill *v.* Kalamazoo Mutual Insurance Company.

tioned act, declares that James Smith, (and certain other persons named therein,) and their associates, and all such persons as should thereafter have property insured in said company, should be, and thereby were ordained, constituted, and declared to be a body politic and corporate, in fact, and in name, by the name of the Kalamazoo Mutual Insurance Company. Section two empowered the company to make contracts of insurance, &c.; and section three provided that all persons who should be insured in the corporation, should be members of it while they remained insured, and that certain persons named should be the first directors of the company, and should continue in office for one year, or until others were chosen. These several acts, in connexion with proof of *user*, were the only evidence adduced to prove the corporate existence of the plaintiffs below. It was urged on the part of the defendants below on a motion for a nonsuit, and the court were also requested to charge the jury, that this evidence was insufficient; and that the organization of the corporation under their charter should have been shown. But the court refused to nonsuit the plaintiffs below on this ground or to charge the jury as requested.

To prove *user* under their charter, the plaintiffs below offered applications to them for policies, and policies issued by them, from 1835 to the time of trial; and also the official bonds of their officers. It was objected that these were matters of record, and could be proved only by the production of the record. But the court overruled the objection and admitted the evidence.

Preliminary to offering in evidence the policy of insurance issued to the defendants below as the consideration of their premium note, the plaintiffs below offered parol evidence that, at the time it was issued, A. Edwards, by whom it purported to have been signed as President, was the acting President, and that A. T. Prouty, by whom it

purported to have been signed as Secretary, was the acting Secretary, of the company. This evidence was objected to on the ground that the records of the company were the only competent evidence to prove who were its officers; but the objection was overruled by the court and the evidence admitted.

It appeared from the records of the corporation which were offered in evidence for the purpose of showing the adoption of the by-laws above mentioned, that, at the meeting of the directors at which such by-laws were adopted, only the president of the company, and *six* directors, (who constituted a quorum,) were present. The declaration, as appears above, alleged that the by-laws were adopted by the president and *eleven* directors, (naming them,) who constituted the whole board. The defendants objected to the admission of the records for the purpose mentioned, on the ground of variance, and also on the ground that a majority merely of the directors had no power to adopt by-laws. But the objection was overruled, and the evidence admitted.

The defendants below urged on the trial, and requested the court to charge the jury, that section 2, of article II, of the by-laws of the company, (by virtue of which the company claimed the right to recover the whole amount of the premium note on which the suit was brought, in consequence of the failure of the defendants below to pay assessments made thereon as alleged in the declaration,) created a forfeiture; that the company had no power under their charter, to pass such by-law, and it was therefore void, and the company were at most entitled to recover only the amount of the assessments remaining unpaid on the premium note. But the court charged the jury that said by-law, a copy of which it appeared in evidence was printed on the back of the policy issued to the defendants below, was valid; that the company had power

under their charter to adopt it; and that it was a contract to which the defendants below were parties, and was therefore binding upon them; and that the company were entitled to recover the whole amount of the premium note.

In defence of the action, the defendants below offered to prove that, (as alleged in the notice of special matter appended to their plea,) the annual meeting of the plaintiffs below, regularly called for the election of officers, and held January 6, 1841, was adjourned without day, and that no officers were elected, and no other act was done at said meeting; that from that time to the commencement of this suit no legal meeting of the company had been held; and that, during the whole of this period, the company had been wholly insolvent, and had neglected and refused to pay their debts.   This evidence, which it was claimed would, if admitted, have shown a dissolution of the corporation, was objected to by the plaintiffs below and rejected by the court.

The jury found a verdict in favor of the plaintiffs below for $28.52 damages, and a judgment for this sum and costs of suit was afterwards rendered.   To reverse which this writ of error is prosecuted.

The errors assigned appear in the arguments of counsel and in the opinion of the court.

*Clark & Mower*, for the plaintiffs in error, contended that the court below *erred:* 1. In deciding that no proof of the organization of the plaintiffs below under their charter was necessary, and to this point cited 10 Wend. 266; 1 John. Ca. 319; 21 Wend. 273.—2. In the admission of the evidence adduced to prove *user.*—3. In the admission of parol evidence that Edwards was acting president and Prouty acting secretary of the company, (the plaintiffs below.)—4. In permitting the by-laws of the company to be read in evidence, which appeared to have been adopted

by the President and a quorum only of the directors of the company, whereas it was alleged in the declaration, that they were adopted by all of the directors, naming them.—5. In charging the jury that the company had power to adopt section 2, of article II, of the by-laws, and that the said by-law was valid, and was a contract to which the defendants below were parties, and therefore was binding upon them, and the plaintiffs below were entitled to recover the whole amount of the premium note. 3 Cow. 464 ; 19 Wend. 37 ; 9 Wend. 571 ; 2 Kent's Com. 296, 298 ; 1 Bac. Abr. 505 ; 1 T. R. 118.—6. In rejecting the evidence offered in defence.   19 John. R. 456 ; 8 Cow. 387 ; 1 Gill & John. 1 ; Jac. Law Dic. Tit. Corp. 6.

*E. Bradley*, (with whom was *Chas. E. Stuart,)* for the defendants in error.   To the point that the evidence offered in defence for the purpose of showing a dissolution of the corporation, was properly rejected, he cited, 3 Burr. 1866 ; *People* v. *Runkle,* 9 John. R. 147 ; *Vernon Society* v. *Hills,* 6 Cow. 23 ; *Slee* v̇. *Bloom,* 6 John. Ch. R. 366 ; *Brinkerhoff* v. *Brown,* 7 Id. 217 ; *Rex* v. *Amory,* 2 T. R. 515 ; Ang. & Ames on Corp. 378 ; 8 Cow. 387 ; 2 Kent's Com. 311.   To the point that the corporation (the plaintiffs below) had power to adopt section 2, article II, of the by-laws, he cited Ang. & Ames on Corp. 177, '59 ; 1 Bl. Com. 476; Kyd on Corp. 69; Bac. Abr. Tit. Corp. D ; 10 Coke, 31 ; Hob. 211 ; Carth. 482 ; *Child* v. *Hudson's Bay Co.,* 2 P. Wm's R. 207 ; Ang. & Ames on Corp. 186, 187; *Stetson* v. *Kempson,* 13 Mass. R. 282 ; 17 Ves. 322 ; 5 Serg. & Rawle, 510.   And, to the point that the president and a quorum only of the directors of the corporation had power to make by-laws, he cited Ang. & Ames on Corp. 281 ; Bac. Abr. Tit. Corp. p. 17 ; Cowp. 249 ; 2 Burr. 101.

FELCH, J. delivered the opinion of the Court.

1. It is urged as a ground for reversing the judgment below, that the court erred in refusing to nonsuit the plaintiffs below, because there was no sufficient evidence to prove their corporate existence, and in charging the jury that no proof of organization under their charter was necessary.

Whether the evidence adduced to prove corporate existence (which consisted merely in the production of the charter of the corporation, and acts amendatory thereto, and proof of acts of *user,*) was sufficient or not, we are clearly of opinion that there was no error in refusing the nonsuit. This court has already decided, in several cases, that the circuit court cannot compel a plaintiff to become nonsuit. He has always a right, if he chooses, to go to the jury with his case.

But we think the evidence was sufficient. This is a case where corporate powers are given directly and *in presenti* by the act, and not where the right to exercise such powers is made to depend upon something to be done *in futuro*. No condition or pre-requisite to the exercise of corporate powers are annexed to the charter. The most that could be required, would be a showing that the individuals to whom the powers were granted, accepted the charter. This was abundantly shown by the testimony in the case. Besides, the contract declared on was made with the corporation, in their corporate name, and by it the defendants admitted the existence of the corporation under the charter which was given in evidence. One of the defendants below was, moreover, by the very act of effecting an insurance with the company, giving the note declared on, and receiving as a consideration therefor a policy of insurance, issued by the corporation, a member of the corporate body. Such is the express provision of the act of incorporation. The defendants are, under the

Cahill *v.* Kalamazoo Mutual Insurance Company.

circumstances estopped from denying the existence of the corporation.*

* The following case having some bearing upon this point, was decided by this court at the January Term, 1841.  Present—WILLIAM A. FLETCHER, *C. J.* and MORELL, RANSOM, and WHIPPLE, *Justices.*

D. W. OWEN AND I. OWEN *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS' BANK OF SANDSTONE.

On plea of the general issue to an action by a corporation *upon a note made payable to the corporation,* the plaintiffs must prove their corporate existence.

ERROR to Lenawee Circuit Court.  Assumpsit by defendants in error, against the plaintiffs in error, upon the following note :

"$700.                                          Sandstone, January 27, 1838.

" Two months after date, we, or either of us, promise to pay the *President, Directors and Company of the Farmers' Bank of Sandstone,* seven hundred dollars, for value received.          (Signed)          *Derrick W. Owen,*

*Isaac Owen."*

The defendants below plead the general issue, and gave notice of set off.

On the trial, the plaintiffs below submitted the cause to the jury without offering any evidence to prove their corporate existence.  The counsel for the defendants in sisted that such evidence was necessary to entitle the plaintiffs to recover, and re quested the court so to instruct the jury.  The court refused so to do, but charged " that the defendants, by making their note payable to the plaintiffs, by the corporate name assumed in the declaration, had admitted their existence as a corporation, by that name, and were estopped from denying their right to recover as such corporation ; and that, therefore, it was not necessary for them to prove their corporate existence." To which charge the defendants excepted, and a verdict having been found, and judgment thereon rendered against them, removed the record into this court, by writ of error and bill of exceptions.

RANSOM, J. delivered the opinion of the Court.  We are satisfied that the court below erred in charging the jury that the plaintiffs below need not prove their corporate existence.  In the case of the *Bank of Utica* v. *Smalley,* 2 Cow. 778, where the subject received a pretty full consideration upon argument and authorities, it was held by Judge *Sutherland,* delivering the opinion, "that where a corporation sues, they need not set forth by averment in the declaration how they were incorporated, but that, upon the general issue pleaded, they must prove that they are a corporation," and many adjudged cases are cited in support of the position.  In the case of *Williams* v. *The Bank of Michigan,* 7 Wend. 540, the doctrine upon this subject was again considered, and thoroughly sifted.  There appears to have been some diversity of opinion upon this question, but the preponderance of authorities seems to be greatly in favor of the position, that plaintiffs, suing as a corporation, should prove affirmatively, that they were a corporation having power to make the contract on which their suit is brought.  In delivering his opinion in the case last cited, the *Chancellor* remarks, that, "there is no doubt that, by the common law in England, and the settled law of the state of New York, if a suit is brought by a corporation, they must, on the general issue pleaded, show that they are a corporation ;" and a number of cases, both English and American, are referred to in support of that position.  When the plaintiffs sue as partners, or as an unincorporated association, and declare upon

2. It is also alleged as error that, in proof of *user* by the plaintiffs below, under their charter, the court allowed in evidence applications for policies, and policies issued by them, from 1838 to the time of trial, and also the official bonds of their officers. The objection was, that these should be matters of record, and should be proved by the introduction of the record.

The proof of *user* must necessarily consist of evidence of the acts of the corporation, showing that they are doing business under their charter. Any acts tending to show this, are admissible for that purpose ; as keeping open an office; having officers acting in the name, and as the agents of the company, &c. The receiving of applications and issuing policies of insurance,—in other words, doing the very business, and in the very manner pointed out by the statute, and in the name of the corporation, would be direct evidence of *user*.

We have no evidence that the policies, or applications, or official bonds were matters of record. They need not necessarily have been recorded. We are clearly of opinion, therefore, that the evidence was admissible.

3. It is also insisted that the court below erred in admitting parol evidence that, at the date of the execution of the policy of insurance referred to in the premium note of the defendants below, as the consideration for which it was given, Abraham Edwards, by whom the policy purported to have been signed as president, was the acting president, and that A. T. Prouty, by whom it purported to have been signed as secretary, was the acting secretary of the company, (the plaintiffs below.) It is insisted

a contract made by the defendants directly to them, in the name of their firm or association, upon the general issue pleaded, it is clear that they would be bound to prove the existence of their partnership, or association. From analogy it would seem, surely, that the same rule should apply to corporations ; more especially to the banking institutions created under our general banking law.

*Judgment reversed.*

that the records of the company were the only competent evidence to prove who were its officers.

The express reference to the policy, in the note declared on, made it a part of the contract as set out in the declaration, and so the policy was admissible in evidence. It was there referred to as the consideration of the obligation of the defendants, and as such, it was competent for the plaintiffs below to give it in evidence for the purpose of showing it valid and binding upon the corporation, and as such a good consideration. But to make it valid as against the corporation, it was not necessary to show that the persons signing it as president and secretary, were chosen to those offices by a regular vote of the corporation, or that their appointments were matters of record. Whether they were or not, does not appear in the case. If they were acting in the capacity in which they had signed the policy of insurance, and were officers *de facto*, the corporation would be as much bound by their contract as if every formality had been taken in their election, and all the proceedings had been spread upon record. In an action against the company on the policy, this would have been all that was necessary to be shown to fix the liability of the company. Ang. & Ames on Corp. 73. And I cannot see why this evidence is not likewise admissible for the purpose of showing that the policy was binding on the company, and therefore a good consideration for the note. The rule of law excluding parol proof, when there is written evidence, does not apply. This was not a case where fraud could be presumed, from the withholding of written evidence, and a resort to that of a secondary character. The very object of the testimony was to show the liability of the party offering it. The policy had been accepted by the defendants below, as the valid obligation of the corporation; it was so admitted by them to be in the note declared on; and the proof

offered and received was the very proof which would have fixed the liability of the corporation in a suit on the policy. There was no error, therefore, in admitting the evidence.

4. It appeared from the records of the corporation offered in evidence for the purpose of proving certain by-laws set out in the declaration, that the meeting of the directors at which they were adopted, was attended only by the president and a quorum of the directors—five of them being absent.—It is now contended, and was urged on the trial, that a mere majority of the board of directors had no power to adopt by-laws. The charter of the corporation authorized the president and directors to adopt by-laws. For the purpose of adopting them, we think that a majority of the directors was sufficient; and, consequently, that those offered in evidence were well adopted and in full force.

The admissibility of these by-laws in evidence was also objected to on the ground of variance,—they being alleged, in the declaration, to have been adopted by the whole board of directors, naming them. But we think this objection was not well taken. The majority, when assembled at a legal meeting, constituted the board of directors, and their act was the act of the whole. The allegation in the declaration that they were adopted by the whole board, naming them, is in legal effect true, although, at the particular meeting when they were adopted, some of the individual members of the board were not present: —the declaration does not allege that they were all present. By the act of the majority in legal meeting assembled, the by-laws became binding on the company in the same manner as though all the directors had been present: it was the act of all, and may well be so alleged in the declaration.

5. It is also contended that the court below erred in

charging the jury that one of the by-laws offered in evidence, viz : Art. II, sec. 2, was valid ; that the corporation had power under their charter to adopt it ; and that it was a contract to which the defendants below were parties, and was, therefore, binding upon them.

The charter of the corporation empowered the president and directors to " adopt such by-laws and regulations for the transaction of the business of said company, as they might deem expedient," &c. § 13.   A copy of the by-law in question, will be found in the preceding statement of the case.   It is contended that even under this general language of the charter, the corporation had no power to adopt this by-law, because it created a *forfeiture*.   The power of a corporation to enforce its by-laws properly made, by pecuniary penalties competent and proportionable to the offence, will not be doubted.   Ang. & Ames on Corp. 200.   But it has been decided that they cannot be enforced by a forfeiture of the property or stock of the defaulting corporator.   *Kirk* v. *Nowell*, 1 T. R. 125 ; *Hart* v. *Mayor of Albany*, 9 Wend. R. 571 ; In the matter of the *Long Island Railroad Company*, 19 Wend. R. 37.   A forfeiture implies the loss of an interest in property, or the being deprived of some legal rights belonging to him who violates the by-law, in consequence of such violation.   Of what property or rights are the defendants below deprived, by the operation of the by-law in question ?   What is the thing forfeited ?   The party is merely compelled to pay his note sooner than he otherwise would be liable to pay it, or a larger amount than might otherwise be required.   The by-law does not purport to compel him to pay more than the amount ; but to enforce the collection of the whole, to be held in the treasury, for the payment of assessments due and to be thereafter made ;—the balance, if any remained after the payment of such assessments, to be returned to him after the policy shall have

expired.   But when was the note payable?   By its very terms it was payable in such portions and at such times as the directors of the company, agreeably to their act of incorporation, might require.   Under the charter the whole premium might have been required in advance.   If the directors require the whole amount to be paid at once, in case of delinquency in the payment of any instalment, it seems to me to be precisely in accordance with the terms of the contract; and surely that cannot be deemed a forfeiture which provides for the collection of a sum agreed to be paid, precisely according to the terms of that agreement.

But this suit is not brought to enforce a penalty : it is upon the defendants' written contract to pay money, with the necessary averments to show their liability under it.   They stand in the relation of contractors simply in the matter here to be tried, and the law of contracts in other cases must apply.

It was competent for them to contract to pay in instalments, or on a contingency, or absolutely at a specified time.   The by-law in question was in force when their note was given, and a copy was printed on the back of the policy executed to them by the company as a consideration for the note.   The whole tenor of the transaction shows a full and perfect understanding on their part, that their liability was to be precisely that which is sought to be enforced in this suit.

We are, therefore, of opinion that the by-law was valid; and that the court below properly charged the jury that it was a contract to which the defendants below were parties, and for this reason binding upon them.

6.  It is also contended that the court below erred in rejecting the evidence offered in defence of the action.   The facts which the defendants below offered to prove, were, that the annual meeting of the stockholders of the corporation, regularly called for purpose of electing officers,

and held January 6, 1841, was adjourned without day, and that no officers were elected, or any other legal business done at said meeting;—that from that time to the commencement of this suit, no legal meeting of the company had been held;—and that, during the whole of this period, the company had been insolvent, and had neglected and refused to pay their debts. The evidence, it is claimed, would have prevented a recovery by showing a dissolution of the corporation.

The charter expressly provides that the first directors of the corporation should remain in office for the period of one year, or until others were chosen. § 3. And also, that if it should at any time happen that an election of directors should not be made on any day when, pursuant to the act, it ought to have been made, the corporation should not, for that cause, be deemed to be dissolved; but it should be lawful, on any other day, to hold and make an election of directors, in such manner as shall be directed by the by-laws of the company. § 5.

In *Slee* v. *Bloom*, 6 John. Ch. R. 366, it was held that a corporation, whose charter contained a provision precisely like the above, was not dissolved by an omission to elect trustees, for more than two years, while the members constituting an integral part of the corporation remained *in esse;* but the old trustees continued in office until others were elected in their stead. And it seems to be the better opinion, that such would be the case, without any such express provision in the charter. Ang. & Ames on Corp. 77; 2 Kent's Com. 295, and cases there cited. This seems to have been the opinion of the court in the *People* v. *Runkle*, 8 John. R. 464. At all events, if, after a failure to elect new directors, the old directors should continue to act, no objection could be taken collaterally, that they were not regularly elected at the proper time, or that the corporation was dissolved by reason thereof. The mem-

bers of the corporation, who are an integral part thereof, may still elect new officers, and continue their business; and, in an action on a contract made with the corporation, such an objection cannot be available to defeat a recovery. The corporate powers must first be declared forfeited by a proper adjudication, in proceedings had for that express purpose. Ang. & Ames on Corp. 77, 510; *Silver Lake Bank* v. *North*, 4 John. Ch. R. 373; *Trustees of Vernon Society* v. *Hills*, 6 Cow. 23.

Applying the principles established by the authorities last cited, it is clear that the evidence offered to prove the insolvency of the corporation, was likewise inadmissible. For, although such insolvency might be a ground for adjudging the corporate rights forfeited, in proceedings against the corporation for that express purpose, yet it cannot be inquired into collaterally, in an action brought by the corporation.

*Judgment affirmed.*