wise, considering that the payments mentioned in the act were those which reduced the means of the debtor and diminished his capability of paying his creditors ratably ; not the mere changing the form of an obligation from an account to a note.

Judgment affirmed.

---

## DRUSE *vs.* WHEELER *et. al.*

### Error to Washtenaw Circuit.

A entered into a written agreement to exchange lands with the trustees of a Church, the proper conveyances to be made as soon as the trustees could get legal authority to act. On the same day he gave verbal permission to the trustees to enter upon the land he was to convey, and to build sheds. The fence was set back and sheds built. Some fifteen months afterwards, A moved back his fence so as to include the sheds, and the trustees, a few days later removed the fence and took off the sheds, &c. *Held*, That there was no right of possession secured under this contract for the exchange of lands. The whole matter was contingent upon the society having the right to act. There was no connection between the formal license and the written contract. The rights of the trustees must have rested on the parol license, whatever they may have been, and a parol license is revocable at any time.

In actions of trespass to lands it is proper to give in evidence acts showing the disposition with which the trespass is committed.

*Opinion by* CAMPBELL, C. J.—Plaintiff brought trespass against defendants for breaking his close and committing various grievances, including the removal of certain fences and sheds, and an imprisonment of his person. Defendants under the general issue gave notice of defense, and also of title in a Baptist Church of which they were trustees, and as such did the acts in question. It appeared that the plaintiff owned a farm adjoining the church lot, and November 29, 1867, entered into a contract purporting to be with the trustees, whereby, as soon as the latter could get legal authority to act, plaintiff was to deed, by warranty deed, to the church the lot they occupied, and a part of his adjacent premises, and the church was to quit-claim to him the half quarter section, including the farm and church premises, and agreed to occupy the land deeded by him for church purposes, parsonages, sheds, &c., to build their erections at certain places, and not to sell the premises for any other purposes except for farming.

On the same day plaintiff gave verbal permission to build horse sheds on that part of his land which was ultimately to be conveyed to the church, and the parties set back the fence and began to prepare the land and had got the sills laid upon the ground when further work was suspended by reason of the cold. In April it was about to be resumed, when, according to plaintiff's proofs, he revoked his permission and refused to allow anything more to be done. The parties, however, went on and built their sheds. Some fifteen months thereafter, plaintiff moved back his fence so as to include the sheds, and a few days after the defendants took down the fences, removed the sheds, and committed the trespasses complained of. There were 17 sheds and they were for the individual use of such as paid for them.

The principal error assigned related first, to the rulings of the Court, touching the respective rights of the parties concerning the premises in question; second, to the elements which might enter into the case as causes of damage.

The Court below held that if the sheds were built by plaintiff's permission for the uses contemplated, they and the land in front of them necessary for access were in the possession of the church, and plaintiff could get no lawful possession again except by voluntary surrender or upon legal process, and that any other taking of possession would make him a wrong doer. That the trustees might lawfully remove the fence, and take off the sheds without becoming trespassers. It was further held that if the trustees entered the land and erected the sheds under or upon the conditions of the contract to exchange lands, which was afterwards reduced to writing, then by the terms of that contract it was the duty of the plaintiff to tender to the trustees a deed of conveyance of the premises, so as to offer to perform on his part before taking steps to revoke the license or gain possession of the lands where the sheds were.

*Held*, That there was no right of possession secured under this contract for the exchange of lands. The whole matter was contingent upon the society having the right to act. There was no connection between the formal license and the written contract. The rights of the trustees must have rested on the parol license, what-

ever they may have been, and a parol license is revocable at any time. The verdict, finding the defendants trespassers must rest on the absence or revocation of the license; and, if revoked, it was before the sheds were built, and the lapse of time between the revocation and the trespass exceeded any possible term required by season or necessity to remove them, and whether they were liable for their value or not they were no less trespassers. The Court was not called upon, therefore, to pass upon these proprietary questions.— The case was thought not to be distinguishable from that of a license to go upon Fair grounds or other places of lawful resort on occasions when they are in use for specific purposes. It was deemed evident that the rulings of the Court were all made upon the assumption that the permission was lawfully connected with the written contract. The entire theory was based on insufficient grounds, and the rulings were erroneous.

It was alleged as error that parol proof was admitted that certain of the defendants were acting trustees of the church. But the rule was considered settled that except for some pecular purposes, such evidence is sufficient. The Court could not try titles to office in any such litigation as the present.

It was charged as error that testimony was excluded as showing the disposition and spirit with which the trespass was committed and the malicious arrest of the plaintiff, to get him out of the way, while the trespass was to be consummated.

On the argument it was admitted that these circumstances should have been shown, except as to the arrest of the plaintiff, which it was claimed, would have been a ground of action by itself and therefore should not have been considered.

*Held,* however, that the authorities clearly recognize the right to recover for such an injury done in connection with the wrongful intrusion as an act of aggravation, in actions for trespass to lands.— The decision of the Court was erroneous in this respect.

There was error also regarding the question of costs. The statute gives costs to the plaintiff, who recovers any sum in trespass, however small, where the title to lands or tenements, or a right of way, or a right by prescription or otherwise to any easement in any land, or to overflow the same, or to do any other injury thereto, shall have been put in issue by the pleadings, or shall have come in

question on the trial of the cause. Both title and license were set p, and each is within the clear intent of the statute.

Judgment reversed and a new trial ordered.

* * *

## GROVIER vs. HALL.

An administrator who fails to inventory property, knowing the same to belong to the estate of the decedent, but treats the same as the property of decedent's widow, the Probate Judge approving and allowing alleged equitable claims in her favor, equal in amount to the value of such property, and allowing the final account of the administrator and ordering and discharging him from liability on his bond, *Held*, That the administrator could not be heard to say against heirs and next of kin on final accounting, that a decision of this sort was unimpeachable. If he had possession of funds which he knew belonged to the estate, or which he had reason to believe so belonged, his omission to place them on the inventory will not excuse him from accounting for them.

agreement of jury—Decision by Court on the evidence produced before Jury, irregular .

Error to Macomb Circuit.

*Opinion by* GRAVES, J.—This was an appeal by the plaintiff in error, as one of the next of kin and heirs at law of decedent, from an order of the Judge of Probate, of June 9, 1865, allowing the final account of Hall as administrator, and discharging him from liability upon his bond to the estate. The parties agreed upon issues which confined the accounting to certain bank stock which stood in the name of decedent, to moneys received by Hall from the widow of decedent and to a claim of interest.

These items were not put upon the inventory, and it was claimed by plaintiff in error that these moneys and the proceeds of the bank stock, together with some interest, were assets of the estate, and were chargeable against Hall in his account. The respondent claimed that these effects were all treated as the property of the widow; that the Judge of Probate had allowed $24,000 of claims against the estate, which were in equity the property of the widow; and that the supposed assets in question were regarded as her own under the circumstances. No commissioners were appointed to pass upon claims, so far as can be gathered from the record, and the