WOLF v. MICHIGAN MASONIC MUTUAL BENEFIT ASSO-
CIATION.

1. MUTUAL BENEFIT ASSOCIATIONS—NOTICE OF ASSESSMENT—AC-
TION OF MINORITY OF BOARD—RATIFICATION.
   In an action against a benefit association to recover a death
   claim, payment was resisted on the ground that the mem-
   ber had been suspended for nonpayment of assessments, while
   plaintiff claimed that no legal notice to pay said assessments
   had ever been served upon the member. It appeared that,
   at the time when the notices of assessment were directed to
   be given, a quorum of the board of trustees was not present,
   but that at the next meeting of the board, when a quorum
   was present, the proceedings of the former meeting, which
   had been duly recorded, were read and adopted. *Held*, that
   any irregularity in ordering said notices to be given was
   cured by the further action of the board.

2. SAME—SUSPENSION OF MEMBER.
   The mere fact that but 13 days intervene between the giv-
   ing of the first and the second notice of an assessment by a
   benefit association, instead of 15 days, as provided for by the
   articles of association, does not render invalid the member's
   suspension for nonpayment after the expiration of the full
   period allowed by the articles for the payment of assessments,

Error to Kent; Grove, J. Submitted January 31, 1896.
Decided March 24, 1896.

*Assumpsit* by Gustave A. Wolf, administrator of the
estate of Solomon Wolf, deceased, against the Michigan
Masonic Mutual Benefit Association, upon a certificate of
insurance. From a judgment for defendant on verdict
directed by the court, plaintiff brings error. Affirmed.

*Walker & Wolf*, for appellant.

*Champlin & Stone*, for appellee.

LONG, C. J. On November 7, 1878, Solomon Wolf, by
a vote of the board of directors of the defendant com-

pany, was admitted into said company, and a certificate of membership duly issued to him. He remained a member of the company until February 19, 1880, when, as is claimed by the defendant, he was suspended, and his name stricken from the roll, for the nonpayment of assessments Nos. 20 and 21. He made no application to be restored to membership, and died July 20, 1880. After his name was stricken from the roll, there were three assessments made before his death; but he was not notified or assessed therefor, for the reason, as it is claimed, that he was not regarded by the association as any longer a member. No claim was made against the association until April 5, 1892, when the plaintiff, as administrator, wrote a letter to the defendant company, asserting the claim, and received a reply that, upon investigation, the company found that the plaintiff had no valid claim against it. It was admitted on the trial that Solomon Wolf died July 20, 1880, unmarried, leaving, surviving him, his brother, Jacob Wolf, of Grand Rapids, Mich., and two sisters, Caroline Goetz, who resides at Cincinnati, Ohio, and Johanna Wolf, who then resided at Grünstadt, Germany; that Johanna Wolf died, intestate, in the fall of 1890, at her home in Germany, and was then unmarried; that on May 11, 1892, an assignment of the claim was executed to the administrator by Jacob Wolf; and that he was authorized to execute the same for and in behalf of Caroline Goetz. This action is brought to recover the amount claimed to be due to the legal representatives of Solomon Wolf. On the trial, the court below directed a verdict in favor of the defendant.

The defendant association was organized under "An act to provide for the incorporation of co-operative and mutual benefit associations" (1 How. Stat. chap. 118). After its incorporation, it caused to be executed articles of association, which were duly filed, and under which the corporation acted. The articles provide for death claims, as follows:

"Upon the death of any member of this association, the sum to be paid to the representatives of the deceased member, as designated upon the books of this association, shall be one dollar for each member of this association, not in any case to exceed $1,000; and, whenever the amount in the general fund shall exceed the amount necessary for the payment of two death claims, then an assessment shall be passed, and the death claim then due shall be paid from the moneys in the general fund." Article 15.

The agreement in the certificate issued to the deceased is as follows:

"The said association agreeing to pay to his legal representatives the sum of as many dollars as there are members of this association at his death, but, however, in no case to exceed the sum of $1,000."

Prior to the suspension of the deceased, three death claims were presented to the association for payment; the latter one to be paid from the surplus fund, which was apparently on hand at that time. The other two claims were to be paid by two assessments to be made upon the members of the company, one dollar each assessment. The only controversy in the case which we think necessary to discuss grows out of the claim of plaintiff that no proper and legal notice was ever served upon the deceased that these assessments were to be paid, and that consequently the company had no power or authority to suspend him from the benefits to be paid at his death. The court directed the verdict on the ground that the notices of these assessments were sufficient and legally authorized, and in consequence of which the deceased was properly suspended for nonpayment of them, and that, therefore, his legal representatives had no benefits accruing to them under the certificate.

The articles of association affecting this question provide:

"The secretary shall keep a record of all meetings of the association and the board of trustees, and of all transactions and business of the association. He shall keep a

complete register of the names, ages, and residences of the members, and names of the lodges to which they belong. He shall receive all moneys required to be paid by its members. * * * He shall prepare all certificates of membership, and all notices of deaths and assessments. He shall keep a record of the deceased members of the association. * * * He shall make a record in the books of the association of the names of all members who have paid, and of all who have failed to pay, the assessments made upon them. * * * He shall make and serve or publish all notices and notifications required by the association or by the board of trustees. * * *" Article 8, § 4.

"The board of trustees shall have a general charge and supervision of the affairs of the association. * * * They shall have power and authority to make such rules and regulations for their government in payment of claims, reception of proofs of death, and transaction of general business as a majority may see fit. * * *" Article 8, § 6.

"A member who has been suspended or expelled from the fraternity * * * shall immediately cease to be a member of this association." Article 12, § 2.

"At any meeting, a majority of the board shall constitute a quorum for the transaction of business." Article 5, § 4.

"The board of trustees, when full, shall consist of 19 members of this association. * * * Each lodge outside the city of Grand Rapids having 20 members belonging to this association shall be entitled to one trustee, until the number of trustees shall be full. * * *" Article 6.

"When official notice has been received of the death of a member of this association, it shall be the duty of the secretary to notify each member of the same; and, unless the death claim has been provided for by article 15 of this constitution, each surviving member shall, within 15 days after the date of such notification, pay to the secretary the sum of one dollar and ten cents; and, in case he shall neglect to pay the same within 15 days, he shall be again notified by the secretary; and, if said sum shall not be paid within 15 days after the second notice, his name shall be erased from the roll of members, and he shall forfeit all claims upon this association: *Provided*, however, that the board of trustees shall have power to restore such delinquent member upon his giving a ·

satisfactory excuse for his default, and payment of all assessments which may have accrued up to the date of such restoration: *Provided,* also, the board of trustees shall have power to restore to membership any suspended member on removal of such suspension, provided said so restored member pay up all dues and claims that would have accrued against him had he not been suspended." Article 16, § 1.

"A written or printed, or partly written and partly printed, notice deposited in the postoffice at Grand Rapids, postage paid, and directed to the member's place of residence as it appears on the books of the association, shall be deemed a sufficient notice."   Article 16, § 2.

"The notice shall be headed in bold type, 'First Notice,' 'Second Notice,' as the case may be."   Article 16, § 3.

It appears that, at the time assessments Nos. 20 and 21 were made, the board consisted of 19 trustees, and therefore 10 trustees were necessary to constitute a quorum. Five, only, were present when these assessments were made; and, when the deceased was reported suspended, only seven trustees were present. It is therefore contended by counsel for plaintiff that, for this reason, the notices were invalid, as well as the action of the board in declaring the deceased suspended from the benefits of the association.

Although no quorum was present at the time the assessments were made, it will be seen from the articles of association that the board of trustees has no power or discretion in the matter of the amount of the assessment. It is always one dollar upon each member, and, if the amount in the general fund exceeds the amount necessary for the payment of two death claims, there is no assessment. It is shown in the present case, and without contradiction, that there was a sufficient amount in the general fund at the time these assessments were made to pay one death claim, and no more; but there were three death claims to be paid, and it became necessary in order to meet such payment that the assessment of one dollar per member upon each of the death

claims be made. The association had never made any rules or regulations for its government in the payment of claims, reception of proofs of death, or the transaction of its general business; but all matters had been left to be governed and controlled by the articles of association. The articles of association, or the statute under which the association was organized, do not vest in the trustees expressly and solely the power to levy assessments, but provide, by article 16, § 1, that—

"When official notice has been received of the death of a member of this association, it shall be the duty of the secretary to notify each member of the same, and, unless the death claim has been provided for by article 15 of this constitution, each surviving member shall, within 15 days after the date of such notification, pay to the secretary," etc.

Official notice had been received that these death claims were to be met; and, under this article, it became the duty of the secretary at once to give the notices of assessment; so that, although there was no quorum present at the time the trustees directed the assessments to be made, yet it is apparent that the secretary had the power to give the notices without the direction of the board at all.

But, be this as it may, we think, if there was any irregularity in this respect, that that was cured by the further action of the board at its next meeting, when a quorum was present. At the time these assessments were ordered (December 18, 1879), the proceedings of the board were recorded upon its journal; and on January 15, 1880, a majority of the board being then present, the minutes of the preceding meeting were read and adopted. This action of the board at that time was a ratification of the proceedings of the minority meeting of December 18, 1879. A majority, in the first instance, could have directed the assessment; and the adoption of the act of a minority by the majority of the trustees at a regular meeting of the board made the action of the minority valid and binding as an assessment, as such ratification was

retroactive, and took effect from the time the assessment was ordered by the minority.  *New York Security & Trust Co.* v. *Saratoga Gas & Electric Light Co.*, (Sup.) 34 N. Y. Supp. 890; *Ellison* v. *Water Co.*, 12 Cal. 542. The cases cited by counsel for plaintiff upon this question are not similar in principle to the present, as here the amount of the assessment was fixed absolutely by the articles of association, and the duty to make the assessment to meet the death losses is clearly defined by the articles, so that the levying of the assessment was a purely ministerial act.

It is further contended by counsel for plaintiff that a sufficient length of time had not elapsed, as required by the articles, between the giving of the first and the second notice.    The first notice was mailed on January 1, 1880; the second, January 15, 1880.   And counsel contend that full 15 days should have elapsed between the time the first notice was given and the second was mailed. It is evident that it was the design of this provision of the articles of association to give the member full 30 days' notice to pay the assessment.   This full 30 days' notice was given, and the mere fact that the second one was given a day too early could not affect any substantial right which a member would have in the payment of his assessment.   But from the record it appears that the deceased did not pay his assessment at the end of the 30 days, when, on February 1, 1880, a third notice was given, and it was not until after this third notice that the resolution was passed by the board suspending the deceased from further benefits in the association.    Death losses accrued after that time, but no notices were mailed to the deceased, for the reason that he was not regarded thereafter as a member; and although he resided in the same house with his brother, who was also a member of the association, and received notices from the association for death losses, no effort was made, as appears by the record, to have the deceased reinstated.   The deceased and his relatives evi-

dently regarded the deceased as suspended, and as having no claim upon the association. After his death, 12 years elapsed before any claim was made upon the company for the payment of the claim. The cause of this delay is alleged to be that the certificate was lost, and was not discovered until about the time the claim was made. .

The contention is also made upon the part of the defense that the claim is barred by the statute of limitations; but we think it unnecessary to discuss that question. The court below placed its ruling entirely upon the questions of regularity of the proceedings to suspend the deceased from benefits, and we think properly.

The judgment must be affirmed.

GRANT and MOORE, JJ., concurred. MONTGOMERY and HOOKER, JJ., did not sit.