## No. 17,718.

B. GILBERT ARONOFF, ET AL. *v.* PIONEER MUTUAL
COMPENSATION COMPANY, ET AL.
(304 P. [2d] 1083)

Decided December 24, 1956.

396

Mr. LESLIE A. GROSS, Mr. BERNARD SOBOL, Mr. GEORGE LOUIS CREAMER for plaintiffs in error.

Mr. CHARLES D. BROMLEY, for Bernard Carraher as Receiver of the Pioneer Mutual Compensation Company.

Mr. DUKE W. DUNBAR, Attorney General, Mr. WILBUR M. PRYOR, JR., Assistant, for the People of the State of Colorado.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

ARONOFF and Eastis, to whom we will hereinafter refer as plaintiffs, as members and policyholders of Pioneer Mutual Compensation Company, to which we will refer as the company, brought suit for themselves and all others similarly situated seeking injunctive and declaratory relief in connection with an alleged illegal assessment levied upon them. They also sought, on behalf of the company, to recover losses alleged to have been sustained by illegal conduct on the part of certain officers and directors of the company in transactions with Simpson & Company, Inc., and Insurance Service Company. This action was No. A-95630 in the trial court. The insurance commissioner of the State of Colorado in a subsequent action, No. A-95974, sought to secure the appointment of a receiver for the company. The two actions were consolidated for trial and are before this court on one record.

Without lengthening this opinion unnecessarily it is sufficient to say that a receiver was appointed and qualified. Stripped of nonessentials the cause as presented in this court is against the receiver, and the relief sought would bar him from enforcing and collecting the asserted unlawful assessment.

Several separately stated claims are contained in the complaint. The second, third and sixth claims involve allegations that certain wrongs were committed by Simpson & Company, Inc., operated by Joseph Simpson an officer thereof, as a result of which recovery in the sum of $300,000.00 is sought on behalf of the company; that Insurance Service Company, through the unlawful

conduct of said Joseph Simpson, was unjustly enriched at the expense of the Pioneer Mutual in such manner as to require an accounting; and that Frank Salisbury, an alleged director of the company, is indebted to the company in the sum of $200,000.00. The three claims above mentioned are not involved in proceedings in this court. With reference to them the trial court said: "Causes of action represented by the second, third, and sixth claims may proceed, but such claims successful or not are insufficient in law or equity even though successfully prosecuted to render the assessment hereinabove referred to invalid, illegal, or unnecessary." This assertion is not disputed by the parties and we give no further consideration to those claims.

The claims with which we must deal are, in very general terms, as follows:

(1) That the officers and directors of the company were guilty of numerous violations of statutory and corporate duties, as a result of which they owe large sums of money to the company, the recovery of which would make the assessment of policyholders unnecessary. It is alleged that notwithstanding this situation the illegal assessment will be prosecuted to collection unless enjoined, although it is invalid because it is grossly excessive and because the levies "bear no relation to the proportionate amount of the total assessment needful to make good the deficiencies of the company which occurred during the lives of the respective policies of insurance upon which said assessment is made," such deficiencies resulting from failure to make timely record of claims.

(2) In the fourth claim it is alleged that the policies of insurance embrace terms relating to assessments, which are in conflict with the articles of incorporation of the company, and which are in conflict with the statutes of New Mexico; that the statutes of New Mexico and Colorado, relating to assessments, are in conflict, and that the articles of incorporation require application

of the New Mexico statutes, all of which makes the assessment as levied ultra vires and void.

(3) The fifth claim is based upon allegations that there were no properly elected directors, and no legally constituted quorum to fix and levy the assessment complained of.

(4) The final claim is that the company was insolvent during the year 1952 and thereafter, and that it had no actual paid-up cash capital or guaranty fund, or unencumbered surplus in the amounts required by the statutes of Colorado, and that it was, therefore, a noncomplying corporation unauthorized to issue policies, thereby rendering illegal any assessment or contingent liability levied thereon.

To these several claims the receiver made answer, alleging that the company made accurate reports of its financial condition, which were available for inspection of interested parties; that the company was solvent at all times since it had a contractual right to impose an assessment equal to the premium income with which to pay claims and obligations; that during the year 1952 and for one year prior thereto, plaintiffs accepted, and had the benefit of policies, and were thereby estopped to assert their claims; that plaintiffs and the class they represent are liable to an assessment adequate to pay claims of Colorado claimants, costs of collection and expenses of the receivership; that said assessment was made pursuant to the direction of the insurance commissioner of the states of Colorado and New Mexico, and the plaintiffs and the class are estopped from objecting thereto. Leave to file amended answer and to present testimony establishing ratification of the assessment by the receiver and the ancillary receiver with approval of the New Mexico court was granted and done.

The summary of argument submitted on behalf of plaintiffs contains seven main captions and twenty-nine separately stated arguments advanced in support thereof. The summary of argument on behalf of defendants

is presented under twelve main points, supplemented by thirty-five separately indexed reasons why one or more of the twelve main points should control the result. The principal arguments of counsel for plaintiffs are:

"1. For several years immediately preceding the attempted levy of assessment on policy holders, Pioneer Mutual Compensation Company operated unlawfully in Colorado. It perpetrated a fraud on the Commissioner of Insurance and on the public which dealt with it relying on its authority to do business within the State. Pioneer cannot, therefore, take advantage of its own wrongdoing and collect an assessment, which would not be necessary had the law been observed, nor can its Receiver take advantage of that Fraud. * * *

"2. The subject assessment could in no circumstances be lawful because it has been levied by persons who had no authority to make a levy. * * *

"3. Attempting to correct the deficiency in levy of assessment detailed in 2 above, there has been an endeavor to ratify the assessment. The ratification is without effect and legal pertinence. * * *

"4. No liability for an assessment can be predicated on the Colorado policies of Pioneer if those policies are construed in the light of the requirements of the charter of that corporation and of applicable statute law. * * *

"5. The assessment is void because the persons against whom it has been attempted to be levied are not persons who can be liable for an assessment. * * *

"6. The assessment as originally levied sought to raise from policy holders enough funds to pay all obligations of Pioneer and create reserves necessary to continue business. In the light of the circumstances prevailing at the time of decree, it being established that Pioneer was to be liquidated and not continued, an assessment the amount of which was established for rehabilitation purposes could not be upheld. * * *

"7. The trial court has completely subverted the insurance law of the State of Colorado in ignoring the

completely irregular conduct of the Salisburys and Simpsons and their total usurpation of authority, in ignoring the complete default of the Commissioner of Insurance of the State of Colorado, and holding gratuitously and without reason" in effect, that inaction on the part of policyholders to stop the unlawful practices of company officers placed the former in pari delicto with the latter.

The principal points upon which defendants rely are stated as follows:

"1. This is not an action brought by a non-resident receiver against Colorado policyholders for the benefit of non-resident claimants.

"2. On the contrary, the contention of the Ancillary Receiver and the Attorney General to the effect that an assessment is not only required by statute but is necessary in equity is based upon the facts that more than 85 per cent of the Company's business was done in Colorado, that there are 1,298 claims involving more than $1,535,000 now pending against Colorado policyholders alone, that each policyholder voluntarily accepted a mutual policy, expecting certain benefits and assuming certain obligations, that by virtue of the terms of the policies and the statutes of this state, all such policyholders became co-insurers who, under the circumstances here existing, are under a contractual and statutory duty to contribute the amount of one annual premium to the liabilities incurred by their mutual company through misfortune which occurred to their co-insureds.

"3. In equity, the assessment is essential. * * *

"4. The contention advanced by plaintiffs to the effect that during the years 1952 and 1953 the company was insolvent and that therefore all policies issued were void, is unsound.

"5. Plaintiffs' argument concerning the absence of a guaranty fund is fallacious.

"6. The questionable authority of the persons who made the assessment, acting for the company, does not prevent enforcement and collection thereof.

"7. The ratification of the original assessment made by the Receiver and the Ancillary Receiver pursuant to order of the New Mexico court was valid and binding. * * *

"8. Under the Rules of Civil Procedure, and in the interest of obtaining in this action a final determination of all issues inherent in deciding the validity of the assessment in question, the trial court was correct in permitting the Ancillary Receiver and the Attorney General to file their supplemental pleading and to show in evidence the ratification of the assessment by the principal and ancillary receivers and the order authorizing, approving and directing such ratification entered by the New Mexico court having jurisdiction. * * *

"9. The assessment originally made, and thereafter ratified and approved, was not excessive. * * *

"10. Counsels' contention that the assessment violated the statute to the effect that no member shall be liable for any part of the contingent premium in excess of the amount demanded in one year after the expiration of his policy is not well founded since in its decree the trial court expressly limited the assessment to those members who held policies during the period of one year prior to March 31, 1954. * * *

"11. Counsels' contention to the effect that the assessment is void because it includes liabilities which did not arise during the policy period of some member is not well founded. * * *

"12. The decision of the lower court was comprehensive in scope, sound in reasoning, correct in its determination and should be approved."

We have given careful consideration to the able and lengthy briefs of counsel for both parties. For obvious reasons we do not give detailed analysis and separate treatment in this opinion to the numerous arguments advanced. When necessary to do so, pertinent facts will be set forth following the statement of the question being considered.

## Questions to be Determined.

First: *May policyholders, members of a mutual insurance company, attack an assessment as being invalid for the reason that the insurance commissioner unlawfully issued certificates of authority permitting the company to do business in 1952, 1953 and 1954, when its financial condition was impaired and it had failed to maintain the required reserve and surplus under the statutes of Colorado?*

██ This question is answered in the negative. It is contended by counsel for plaintiffs, that the company perpetrated a fraud on the Commissioner of Insurance and on the public with which it dealt, and there is abundant evidence sustaining that contention; that prospective policyholders had a right to rely on the certificates issued; that when the official unlawfully issued the certificates to the company, notwithstanding its appalling financial condition, the certificates were in fact void and could not give validity to any act of the company and that policies issued by it during the period in question could not be subjected to any assessment because they were void.

We think it a sufficient answer to these contentions to direct attention to the following authorities: In *Cooper v. Shaver* (N.Y. 1862), 41 Barb. 151, 157, 158, the court declared:

"The several offers to prove that the company had not at any time capital to the amount of $100,000., and that the company surrendered to the makers, and the makers drew out, a large portion of the stock notes on which the company was formed, without any payment, related to the organization of the company, and affected the existence of the corporation. It cannot be thus impeached. After it is once established according to the provisions of the statute, upon proper evidence, its validity cannot be questioned, or its legal existence denied by any of its members. * * * The corporation is responsible to the government, and until forfeiture may

continue to exercise its legitimate functions. * * * It cannot be attacked collaterally; and judicial proceedings must be resorted to and judgment of ouster had, to effect a dissolution. * * * Added to this defendants were members of the corporation. * * * And as such not in a condition to assail an organization which had existed for a number of years. The defendants could not thus be discharged from their liability and the persons insured deprived of the very means intended and provided, for the payment of accruing losses. I think, therefore, that the evidence was improper."

That such is the law is supported by ample authority. *Darnell v. Equity Life Ins. Co.'s Receiver,* 179 Ky. 465, 200 S.W. 967, 970; *Freeland v. Penn. Central Ins. Co.,* 94 Pa. St. Rep. 504, 513; *Cahill and Smith v. The Kalamazoo Mutual Insurance Co.,* 2 Doug. 124 (Mich.) (a case answering a number of questions herein raised); *Appleton Mutual Fire Insurance Co. v. Jesser,* 5 Allen 446, 448 (Mass); *Trumbull County Mutual Fire Ins. Co. v. Horner,* 17 Ohio Reports 407; *Perkins v. Fish,* 53 Pac. 901 (Calif.); *Medlin v. Commonwealth Bonding and Casualty Ins. Co.,* 180 S.W. 899, 905, 906 (Texas); *The National Mutual Fire Ins. Co. v. Yeomans,* 8 R.I. 25, 33. In the last cited case, in denying a policyholder's right to attack corporate existence in order to defeat an assessment, the court used this pertinent language:

"* * * the only question has been, whether the defendant is not estopped to deny it, thus incidentally, for the purpose of avoiding an obligation into which he has deliberately entered, and upon the faith of which others have become co-insurer and co-insured with him. If, upon such a ground, he could avoid payments of his assessments, — the fund to which those members who have sustained losses by fire must look for their indemnity, — it would be very much like permitting him to practice a fraud upon them."

Second: *Was the assessment void because it was levied by persons who had no authority to do so?*

This question is answered in the negative. Ultimate facts giving rise to the above questions, concerning which there is no substantial dispute, are that the assessment was levied by Frank Salisbury and Claude Salisbury, brothers, who were not directors of the company duly selected by the provisions of its charter, and qualified as required by the laws applicable at the time assessment was made. The board of directors by charter provision consisted of five, and a quorum consisted of a majority, or three. It is contended that an assessment by two persons would be void as the act of less than a quorum, even if the Salisburys had been lawfully elected directors. It is admitted that the levy of assessment was ratified by the Colorado receiver as well as by the receiver in New Mexico, and the court in each jurisdiction approved the ratification of assessment. It also is undisputed that the Commissioner of Insurance finally directed that the assessment be made and that it followed as a result of his direction. .

█ The policies issued by the company to plaintiffs and other policyholders created a contractual contingent liability applicable to each member. Policyholders in a mutual company are members. To the extent of the contingent liability provided for in the contract each member became an insurer as well as an insured. This principle of mutuality, of bilateral contractual obligations, forms the solid core of mutual insurance. The members in effect enter into mutual covenants to indemnify each other against loss, and they contract through and with the company. *Clark v. Spafford,* 47 Ill. App. 160; *Union Ins. Co. v. Hoge,* 21 How. 35, 16 L.Ed. 61, 67; *White v. Haight,* 16 N.Y. 310, 318; *Savage v. Medbury,* 19 N.Y. 32, 33, 34; *Mutual Fire Ins. Co. v. Jean,* 53 Atl. 950, 951 (Md.); *Wardle v. Townsend,* 42 N.W. 950, 951, 952 (Mich.); *People v. Central Mutual Ins. Co.,* 313 Ill. App. 84, 39 N.E. (2) 400, 409. The contingent liability is a contractual fixed obligation. It is

provided by C.R.S. 1953, 72-1-3, that the insurance department, "shall be charged with the execution of the laws relating to insurance now and which may hereafter be enacted, and shall have a supervising authority over the business of insurance in this state." It is mandatory when certain conditions develop in a mutual insurance company that an assessment be levied. C.R.S. 1953, 72-8-14. Vested with the authority reposed in him, the Commissioner of Insurance directed the company to levy an assessment, and his direction was followed.

The receiver of said company, and the ancillary receiver for the State of Colorado, stand in the shoes of the company which is in receivership, with exactly the same rights and obligations with respect to the assets and property of such corporation that said company had at the inception of the receivership, 45 Am. Jur. 130. When the receivers in New Mexico and Colorado, with the approval of the district courts in Colorado and in New Mexico, ratified the assessment, the act of ratification was valid and cured any defects which may have existed because of the absence of a legal quorum of directors in making the original assessment. *Wolf v. Michigan, Masonic Mut. Ben. Ass'n.,* 66 N.W. 576, (Mich. 1896).

Third: *In the instant case do the statutes of Colorado apply as to the extent of liability for assessments, the purpose for which they may be levied, and any limitations placed thereon?*

This question is answered in the affirmative. It is contended by counsel for plaintiffs that, with respect to the matters covered in the above question, a consideration of the articles of incorporation, the policies issued in Colorado, and the statutes of New Mexico and Colorado, give rise to irreconcilable conflicts; that the company could not, and did not, conform to all requirements, and that therefore the assessment was ultra vires and void. With this contention we cannot agree. The lia-

bility for the payment of an assessment by a policyholder who became a member by accepting a policy in Colorado, as well as any limitation which may be placed upon the levy of such an assessment, is to be determined by the statutes of Colorado and not by those of New Mexico. In paragraph 22 of each policy issued in Colorado is the provision that, "Terms of this policy which are in conflict with the statutes of the state wherein the policy is issued are hereby amended to conform to such statutes." *Pink v. A.A.A. Highway Express, Inc.,* 314 U.S. 201, 86 L.Ed. 152.

Fourth: *Under Colorado law, is a policyholder relieved from the obligation to pay an assessment on a mutual insurance policy on the ground that such policy was not issued when the liabilities were incurred, for the payment of which the assessment is made?*

▮ This question is answered in the negative. Counsel for plaintiffs contend that no member's policy can be assessed for any liabilities not arising during his own policy period.

There is no statutory limitation with respect to the time in which liabilities arose in order to make a policyholder liable. We cannot hold that a policyholder will be liable only for that portion of the liabilities which arose during the time he held his policy. We cannot require, in the absence of a statutory provision to that effect, that in order to assess each of the more than 40,000 Colorado policyholders an audit must be taken day by day to see when liabilities accrued so as to apportion such liability with respect to each individual policy and its commencing and ending date. Such a task would be an impossible one and so expensive as to make an assessment useless.

The Colorado statute has imposed an assessment obligation with respect to liabilities exceeding assets without regard to the date of the incident out of which the liability arose, and without limitation concerning the

policy period of any member. This liability to assessment is subject only to the limitation that notice thereof must be given within a year after the expiration of a policy, and that the assessment shall not exceed the amount of the annual premium. Within these two limitations as to time of notice and maximum amount of assessment, the liability of the policyholders is absolute. *Illinois Coal Operators Mutual Employers Liability Insurance Co. v. Chicago, etc. Coal Co.,* 217 Ill. App. 625. Authorities holding to the contrary must be considered in the light of the statute of each jurisdiction, and generally those statutes expressly limit the liability for assessment," * * * on account of losses and expenses incurred while he was a member," or by use of other words of similar import.

Fifth: *Is the assessment void as violative of the statutory time limitation of one year?*

 This question is answered in the negative. The pertinent part of the controlling statute of Colorado reads as follows:

" * * * no member shall be liable for any part of such contingent premium in excess of the amount demanded in one year after the expiration of his policy. * * * "

The assessment here questioned was ordered and levied February 17, 1954, so that as of March 15 all policyholders had been notified thereof. In order to provide full opportunity for the receipt of notice by all policyholders the trial court decree contained the following:

"That the assessment ordered on or about the 17th day of February 1954 and issued in March of 1954 was, and the same is hereby declared to be valid and effective, and that the amount thereof is due and owing by each of the policyholders of said company in an amount equal to one year's premium on all policies held by them at any time within the period of one year prior to the date of the levy of said assessment, which date is hereby established as March 31, 1954."

The limitation expressed being in complete accord with the statutory limitation, no complaint can be made that the notice of assessment might originally have been sent to policyholders not included in the court's decree. As to those included within the time limit established by the court, the order complied with the statute and those properly included cannot complain because the original notice might also have been sent to others not so included.

Sixth: *Is the assessment void for the reason that it is excessive?*

This question is answered in the negative. Three reasons are readily available in answer to the argument made in this connection by counsel for plaintiffs.

First. Under the facts and circumstances shown by the record in this case, it cannot be said with certainty that the assessment is too high. It is within the limitation of the law and the policies. In 19 Appleman, *Insurance Law and Practice,* at page 800, we find the following:

" * * * an assessment may be made which exceeds the losses, since a reasonable margin may be allowed for contingencies since a part of the assessment may be uncollectible because of the insolvency of members."

Second. If more than is required is brought in, there is nothing in the decree permitting misapplication and any surplus will be refunded.

Third. Policyholders may not collaterally attack either the necessity for nor the amount of an assessment, ordered by the two insurance commissioners, made by the *de facto* officers of the company, ratified by the Receiver and Ancillary Receiver, and approved as to both amount and necessity by the court in New Mexico which has jurisdiction of the principal receivership and exclusive jurisdiction to pass upon the question of necessity for, and amount of, an assessment.

Other arguments advanced by counsel for plaintiffs,

410

not specifically dealt with in the foregoing, have been carefully considered and are hereby resolved in favor of the judgment entered by the trial court, and that judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE HALL not participating.