## Pennsylvania Mining Co. v. S. P. Brady & Co.

Plaintiffs in error being indebted to defendants in error, agreed to turn out certain copper to them, which they were to sell, upon the understanding that after retaining about sixty per cent. of the proceeds of the sale of the same in payment of said indebtedness, they were to pay over the balance of the proceeds and deliver up the original evidences of the indebtedness. It was further claimed that in case said plaintiffs in error should have anything left after paying their debts, or were ever able, that they would pay defendants in error, the amount of their loss. The property was sold, and duly accounted for, and the acceptances delivered up.

Suit was brought to recover the balance due on the original indebtedness. The declaration was on the common counts.

A witness (Oat) in behalf of defendants in error, swore that the settlement was a final one; while a witness (Brady) for the plaintiffs in error, testified that it was conditional.

The court charged the jury, that if the copper received was to discharge the debt, the plaintiffs could not recover. Also, that if the company was only to be thereafter liable conditionally to the plaintiffs, then they could not recover, because they had not sued on the new agreement. Counsel for the defendant then requested the court to charge the jury, that if they believed either of said witnesses, and found the facts to be as testified to by either of them, then there was a new agreement on which the plaintiffs were bound to sue and declare, and that not having done so, they could not recover. The request was denied, and the jury gave a verdict for the plaintiffs.

*Held*, that the request should have been granted. The testimony of Oat was entirely inconsistent with any right of recovery, and that of Brady clearly showed that a new contract had been substituted for the old one. The testimony was unambiguous, and not open to two constructions, and the request was not therefore objectionable in form. The plaintiffs should have sued on the new agreement.

*Heard January 8th and 9th. Decided January 13th.*

PENNSYLVANIA MINING Co. *v.* BRADY & Co.

Error to Wayne Circuit.

This was an action to recover a balance claimed to be due to Brady & Co., for goods sold and delivered.

The declaration was in assumpsit, upon the common counts.

The defendant pleaded the general issue, and gave notice of set-off, payment, accord and satisfaction.

Judgment was rendered for the plaintiff.

The errors assigned are based upon refusals to charge, by the circuit judge; and which are stated in the opinion.

*A. W. Buel,* for plaintiff in error.

1. The new agreement suspended the plaintiffs' debt, and they had no right to sue on the original acceptances, pending the execution of the agreement; and on being carried out, it extinguished that right, for it expressly required their surrender.

And if true, it necessarily in like manner suspended the the right to sue on the original contract of purchase, and, as we shall claim hereafter, equally extinguished that, provided there ever was any such right, after giving the acceptances.

*a.* It released endorsers, if there were any, and so freed the acceptances from liability to dishonor.

*b.* It gave defendant a good cause of action against plaintiffs for the surplus proceeds of the copper sold, had they refused to remit it.

*c.* It is an entirely new contract, and wholly different from that of the acceptances of the original contract of purchase.

Its terms differ as to time, mode, and manner of payment, and amount to be paid.

*d.* It was a good defense in this case as payment.

2. If not a good defense as payment, it was such as accord and satisfaction.

*a.* If not a good defense, as payment or as accord and satisfaction, it was such as a substituted contract, on the principle· of a release or discharge.

All the writers on moral law tell us that upon the surrender of the acceptances, they and the debt thereby secured are to be presumed forgiven and extinguished.— *Puffendorf.*

Such, too, is the legal presumption, from defendant's possession of the acceptances.

There is nothing in the case to meet or explain away this presumption.

3. The plaintiffs got and now hold all their rights under the contract: the copper, its proceeds to the amount agreed on, and, according to Brady's testimony, defendant's conditional promise to pay them $3,500.

The substituted contract is all that is left of the whole transaction on which to allege or sue for any further liability to plaintiffs.— 5 *Ham.* 375; 2 *B. and Ad.* 328; 1 *C. M. and R.* 741; 29 *Barb.* 156.

The fact that a substituted contract is a valid defense, proves the necessity of declaring upon it.

This mode of defense proceeds on the principle that the substituted contract is a release and discharge, even if in the particular case it be not technically payment, or accord and satisfaction.

Where creditors made an agreement for settling with their debtor, which was executory as to both parties, and the debtor assented to it, it was held, even if not strictly an accord and satisfaction, to be a defense under the general issue to a suit, on the original contract by way of substituted contract.— *Good v. Cheeseman,* 2 *B. and Ad.* 328.

4. The agreement was conditional, assuming Brady's testimony to be true.

A conditional contract must be declared on specially.— 4 *Campbell* 201; 6 *Wend.* 394; 1 *Hill,* 526; *C. and C. Cases* 279; 5 *D. and E.* 482; *Story on Prom. Notes,* § 27, *note* 3.

In declaring on the common counts, plaintiff must allege an absolute and unconditional promise. To allege a

conditional promise would be inconsistent with the nature of the counts, without dictum or precedent to support it, and bad on demurrer.

If he could not allege it, he could not prove it; and if he could not prove it, it could not avail him, if proved.

5. This court has already in this case passed on the legal effects of the agreement as testified to.— *Penn. M. Co. v. Brady et al.* 14 *Mich.* 260.

*Moore & Griffin,* and *J. P. Whittemore,* for defendants in error.

COOLEY CH. J.

Brady & Co. brought suit against the Pennsylvania Mining Company to recover a balance due for goods sold and delivered to the Northwest Mining Company, a corporation of which the Pennsylvania was the successor, and, therefore, in law, as it is conceded, liable for its debts. No question is made in regard to the original liability, but the mining company claim that they have been discharged by an accord and satisfaction, or that, if they are liable to Brady & Co. at all, it is only upon a conditional agreement which has been substituted for their original indebtedness, but which is not counted upon in this suit.

There are certain facts in the case which are undisputed. The account of Brady & Co. with the Northwest Mining Company was made in the fall of 1860, and in April, 1861, acceptances were given for the amount, payable in June and July following. Before these acceptances fell due, Samuel P. Brady went to Philadelphia, where the company had its business office, and there had an interview with the board of directors, in regard to some arrangement of Brady & Co.'s claim. It was assumed in that interview, on both sides, that the company were unable to pay their debts in full, and it was at first proposed that they should give to Brady & Co. bonds, at rates which would have realized

them about sixty per cent. of their claim, if they could have sold them in the market; but a difficulty being experienced in making this sale, Brady finally concluded to take of the company a bill of sale of a quantity of copper, supposed to be about 50,000 lbs., then in transit from Eagle Harbor to Detroit, with the understanding that it was to be sold in market, and that after retaining from the proceeds $5,743.08, which was the sum they had hoped to realize from the bonds, Brady & Co. should pay over to the mining company the balance : and a bill of sale of the copper was made by the mining company to Brady & Co. accordingly. As to whether this arrangement should constitute a complete discharge of their demand, Brady, who was examined as a witness in the case, says: "I represented that taking sixty cents on the dollar as a compromise was a pretty hard case, having saved the company by stepping in and advancing them their supplies after they had met with disaster by fire at Eagle Harbor, when, if I had failed to do so, the company would have had to stop mining for the winter. They stated it was a very hard case, or words to that effect, and that if they were ever able, I should be paid every dollar of the original debt. This was stated at the time of the negotiations which resulted in the final settlement while they were there. The next day I read this memorandum to Mr. Day, the Secretary and Treasurer, and to it he assented:

"'PHILADELPHIA, June 20, 1861.

It is understood in the settlement that took place yesterday between S. P. Brady & Co. and the Northwest Mining Company, that in case said company have any thing left after settling their debts, or are ever able, they will pay to S P. Brady & Co. thirty-five hundred dollars, the amount of loss sustained by them in the above settlement.'"

[Signed by Mr. Day, as witness.]

Mr. Brady also says, that under this arrangement, the acceptances were to be delivered up to the company, and

that this was subsequently done. On his being examined a second time, the following questions and answers appear:

"*Q.* State whether in the settlement which you had with the board of directors of the Northwest Mining Company, on June 19, 1861, it was in any way made a condition of the company's turning out to you the copper, that you should absolutely discharge your debt against the company, and whether any receipt was taken or memorandum made, or words used by any one on that occasion, embracing or containing such a condition?

"*A.* I do not think there was anything said in relation to my fully releasing the company on my claim against the company. On the contrary, I think it was understood that if the company had anything left after the payment of their debts, or if they were ever able to pay, I should have the full amount of the balance due me.

"*Q.* State as fully as you can remember what was said embracing the understanding of which you have spoken.

"*A.* I represented to the company my disappointment at not receiving more than $5,743.08, and that it was rather hard, inasmuch as I had stepped forward and advanced the company means to go on for the winter, after they had met with a serious disaster by fire at their mine on Lake Superior, when, if I had not done so, they would probably have been compelled to stop, and I thought they ought to do better by me; to which they remarked that in case they had anything left after the payment of the debts, or were ever able, they would pay me every dollar.

"*Q.* State to what point or subject of conversation the attention of the parties was directed solely upon that settlement between the company and yourself.

"*A.* My purpose was to get out of the company all I could at that time; and theirs seemed to be to give me all they could consistently with the claims of their other creditors. They seemed particularly anxious to settle with me,

because of the effect which they represented it would have upon others."

Brady's testimony was all which was put in by the defendants (below) to show this settlement. The plaintiffs below gave in evidence the depositions of George R. Oat and others, who were at that time directors of the mining company, and who testified to the arrangement made with Brady, substantially as he stated it, except that they claimed the arrangement to have been a full and final one, and denied the agreement on the part of the company to pay the balance of Brady & Co.'s claim conditionally, though they admit that there was some talk by individual directors to that purport. These depositions, together with those of Brady, constituted all the evidence in the case bearing upon the turning out of the copper by the company, and as to what the agreement was which was then had in regard to it. The copper was subsequently sold by Brady & Co. for an amount exceeding $5,743.08, and the surplus above that sum duly paid over to the company.

The present action is brought upon the original indebtedness, and not upon any conditional promise. If the plaintiffs below are entitled to recover at all, it is because the original debt has remained unaffected by the turning out of the copper and the application of the proceeds, except so far as those proceeds reduced the amount by payment. This court, however, has decided, that if an agreement was made between Brady and the company by which the $5,743.08 was to be in satisfaction of Brady & Co.'s claim, except in case they should have anything left after settling their debts or were ever able to pay, then by such agreement the original indebtedness was discharged, and the company can only be made liable in a suit on the substituted agreement, and by proof showing that property was left, or that ability to pay exists.— *Pennsylvania Mining Co. v. Brady,* 14 *Mich.* 260. And we are unable to discover anything in Brady's testimony which has any tendency to show any expectation

or understanding on the part of any of the parties that the original debt was to remain after the arrangement he testifies to was entered into.  His testimony is not open to two constructions.   It is impossible, as it seems to us, to come to any other conclusion, than that the parties fully understood at the time, that the only liability which should thereafter remain against the company, should be the conditional liability which Brady had so carefully specified and set forth in his written memorandum witnessed by Day.

Under these circumstances, as it is very clear that all the testimony put in by the plaintiffs themselves touching this arrangement was inconsistent with any recovery by them, inasmuch as it showed an absolute and unconditional discharge, it would seem impossible for the plaintiffs to recover at all.   The court correctly charged the jury, that if they should find from the evidence that a new agreement was made between Brady and the company on June 19, 1861, by which the $5,743.08 was either to be in absolute discharge of the debt, or was to be a conditional discharge, then the plaintiffs could not recover.   Nevertheless the jury found a verdict for the plaintiffs.

Now as all the evidence given in the case tended to show a substituted agreement, and the only question which could arise upon it was whether the discharge was an absolute or a conditional one, it seems evident either that the jury acted perversely, or that they were misled by something in the charge or by refusals to charge.   Perverse action in the jury is not to be presumed; and the charge of the court, so far as it goes, is clearly correct.   It only remains to be seen whether there has been any refusal to charge of which the defendants below could complain.

The circuit judge was asked to charge the jury, that if they believed the testimony of either Oat or Brady, and found the facts to be as testified to by either of them, then they were instructed that there was a new agreement on which the plaintiffs were bound to sue and declare, and that not

having done so, they could not recover in this action. This request was declined.

Two objections are made to the request:

1. That the substance of it is covered by the charge actually made.

In regard to this, we think the charge as given is one which would not permit the jury, if they followed it, to render any verdict for the plaintiffs unless they misapprehended entirely the purport of the evidence which had been laid before them. The court had charged them that if they found either an absolute or a conditional discharge established, the plaintiffs could not recover; and all the evidence tended to show the one or the other. But inasmuch as the discrepancy in the testimony related solely to the conditional nature of the arrangement, and that was an immaterial fact in the present case, we discover no occasion for putting a hypothetical case to the jury, and are of opinion that it would have been proper to charge them as requested. Such a charge could leave them in no doubt as to the rule which must govern the case; while it is apparent that, under the charge as given, they erroneously supposed there was evidence in the case from which they would be warranted in returning a verdict for the plaintiffs consistent with their instructions. Had the charge asked for been refused on the ground that it was covered by the instructions actually given, the jury would have been less likely to be misled; but they might fairly infer, after the refusal, that the judge considered the evidence in the case consistent with a recovery by the plaintiffs under the instructions he had given.

2. It is objected that the defendants were bound to state, in their request, the particular facts which they considered established by the testimony of Brady and Oat, and which they claimed constituted the new agreement, so that the jury might be charged in reference to such facts, and on the hypothesis that they found them established; and that it was improper to give instructions based upon the

hypothesis of their believing a particular witness, when perhaps the conclusions they might draw from the testimony of that witness might be different from those which would be drawn by counsel or court.

So far as the testimony of Oat is concerned, it is clear to our minds that it was not susceptible of two interpretations. We have already expressed the same view in regard to the testimony of Brady. If it were fairly open to two conclusions, the objection would have force. But the facts he had testified to were few and simple, and there was no danger of misleading the jury by instructing them as prayed. Nothing could possibly be gained by repeating the facts to which he had testified in the request. The case was peculiarly one where precisely such a charge was most likely of all others to convey to the jury most clearly the meaning of the judge, and to enable them to apply it without error to the case before them. There was neither ambiguity nor confusion in the testimony of either Brady or Oat, and neither was qualified by any other testimony on a point material to the case. And as no other charge could have presented to the minds of the jury their duty in the case in more unexceptionable manner, we think the court erred in not complying with the request.

The judgment must be reversed, with costs, and a new trial ordered.

The other justices concurred.