## Henry Druse v. Aaron R. Wheeler and others.

*Trespass quare clausum : License.: Contract for sale of lands : Evidence.* In an action of trespass *quare clausum*, etc., where the defense is, that the entry was to remove certain sheds erected under certain license from the plaintiff, a written contract between the parties for the future sale of the lands to the defendants, which gave no right of present possession, and did not even operate as a license until performed by the defendants, is not material evidence in defendants' behalf, where it appears not only that the contract was never performed by the defendants, but also that, before making the erections in question, they had deliberately determined not to perform it.

*License: Revocation: Inhibition: Evidence.* Where the testimony on the respective sides in such case, in reference to revocation of verbal license to make the erections on plaintiff's land, by forbidding their erection, differs only in this: that one side states it as an unlimited and unqualified inhibition, while the other states it as an inhibition until said written contract should be performed, when the evidence all shows that the contract had not then, or since, been performed, and that the defendants had before then determined not to perform it, both equally and directly prove such revocation; the only discrepancy between them being upon a point immaterial to the question, there was no question of fact upon the revocation in dispute between the parties.

*Trustees: Notice to one, notice to all.* This inhibition having been made to, and in the presence of, one of three trustees, had the same effect as revocation of an oral license, as if all had been present.

*Reasonable time.* The lapse of time between April, 1868, and July, 1869, exceeds any possible term required by reason or necessity, to remove the erections in question in this case, after the revocation of the license to make the same.

*Reasonable time: Charge to the jury.* While the question of reasonable time may sometimes be peculiarly a proper one for the jury, yet, where the court can clearly see from the nature of the case, that the time exceeds any possible term required by convenience or necessity, it should so determine, and so instruct the jury.

*License: Renewal: Revocation.* The use of the sheds in question for nearly fifteen months after their erection, without interference by the plaintiff, did not, under the circumstances of this case, tend to show a new license, or the withdrawal of the former revocation; this fact, was therefore immaterial.

*Questions of law : Charge to the jury : Evidence.* The tendency of evidence, or whether there is any evidence to prove or disprove a particular proposition, is a question of law; and where all the evidence on both sides tends clearly to prove a fact, such fact may, and generally should be, assumed as proved; and in such case a charge to the jury, which in effect, tells them it is competent for them to find either way,—for or against the existence of such fact,—is erroneous.— *Hewitt v. Begole, 22 Mich., 33.*

*Heard October 12. Decided November 23.*

Error to Washtenaw Circuit.

This action was trespass *quare clausum*, etc., brought by plaintiff in error, for breaking his close and committing various grievances, and removing certain fences and sheds.

Defendants pleaded the general issue and gave notice of license, and also of title in a Baptist church, of which they were trustees, and as such did the acts in question.

On the trial it appeared that plaintiff owned a farm adjoining the church lot, and on November 26, 1867, entered into a contract with the trustees, whereby, as soon as the trustees could get legal authority to act, plaintiff was to deed, by warranty deed, to the church the lot they occupied, and a part of his adjacent premises, and the church was to quit-claim to him the half-quarter section, including the farm and church premises, and agreed to occupy the land deeded by him, for church purposes, parsonage, sheds, etc., to build their erections at certain specified places, and not to sell the premises for any other purpose, except for farming purposes.

On the same day plaintiff gave verbal permission to build horse-sheds on that part of his land which was ultimately to be conveyed to the church, and the trustees set back the fence, and began to prepare the land, and had got the sills laid upon the ground, when further work was suspended by reason of the cold. Early in April, when the work was about to be resumed, the plaintiff forbid further proceeding with the buildings. The evidence as to what actually took place at this interview is fully set out in the opinion. The parties, however, went on and built their sheds. About fifteen months afterwards, the plaintiff moved his fence back so as to include the sheds, and four days later, on July 6th, 1869, the defendants tore down the fences, removed the sheds, and committed the trespass complained of. The sheds erected were seventeen in number, and were for the individual use of such as paid for them, and were so used without interference from the plaintiff, while they remained standing.

The questions raised, and how they are raised, are sufficiently set forth in the opinion.

*S. E. Engle* and *H. J. Beakes*, for plaintiff in error.

*C. Joslin*, for defendants in error.

CHRISTIANCY, CH. J.

This case was formerly before us upon a similar (though not precisely the same) state of facts, and the judgment being reversed, was sent back for a new trial.—See *22 Mich., 439.* A new trial having been had, the case is again brought before us by writ of error and exceptions taken on the trial, by the plaintiff below, who is also plaintiff in error.

For the nature of the written contract between the plaintiff and the trustees of the church, which was given in evidence on the trial, and its effect, as well as the general nature of the controversy, we refer to the opinion of this court in the case above cited.

Upon the last trial, which is now in question, there was no pretense on the part of the defendants (the trustees, and those assuming to act under them in the removal of the sheds from the plaintiff's land) that the trustees had performed, or offered to perform, the contract. On the contrary, it was distinctly proved by some of the trustees themselves, and not disputed, that, before the erection of the sheds upon the plaintiff's land, they had deliberately determined not to perform the contract on their part; though it was evident from the whole testimony, and not in any way controverted, that the only license given by the plaintiff for placing the sheds, or any part of them, upon his land, was given on the faith of, and in reliance upon, their undertaking to perform the contract on their part, and that it

was only by their performing that contract that they could expect to acquire the right of erecting and maintaining their sheds upon his land.

As the contract gave the trustees (or the church which they represented) no right of possession, and did not even operate as a license to use the land of the plaintiff for the sheds, or for any other purpose, until performed by the trustees, and it never was performed or attempted to be performed by them, it is not easy to see what bearing it could have, or how it could be material to the controversy. It tended, it is true, in connection with the proof of its non-performance, to show the good faith of the plaintiff in originally granting the verbal license to place the sheds upon his land. But it is difficult to see how it could have any other bearing upon the case.

That it did not operate as a license for the erection of the sheds, was fully settled by this court in the case as formerly presented; and this contract being inadmissible for any such purpose, there was no evidence nor any pretense of evidence, tending in any possible degree to show any *other* than a *verbal license* for the erection of the sheds upon the plaintiff's land. And the testimony upon *both sides* agrees entirely that the license given was a *merely verbal license,* given in the fall of the year 1867; that the sills were soon after laid down; but that they did not raise, or get ready to raise the sheds, until the day after the township meeting in April, 1868.

As to the question of the revocation of the license, the testimony on both sides, when properly considered, is equally clear, direct and positive, that on the morning of the day after the township meeting, when the defendants (or their contractor) were getting ready to raise the sheds, the plaintiff revoked the license to erect them upon his land, and forbade their erection there. In every particu-

lar essential to the question of revocation the testimony upon *both sides equally* and directly goes to prove this revocation, the only discrepancy being upon a point immaterial to the question.

That on the part of the plaintiff, by himself and William Druse, was, that the plaintiff forbade them to raise the sheds, or to do any thing more on the land; on the part of defendants, Brooks, who was the contractor and one of the trustees, as well as a defendant, says, it is true, in the beginning of his testimony upon this point, "Mr. Druse did not revoke his permission before the sheds were raised, that I know of;" yet he immediately goes on to state what he claimed that Druse did say, thus showing that all he meant by saying that he did not know that Druse had revoked the license, was, that he did not know that this amounted in law to a revocation; for, after the words just quoted, he proceeds to say: "In the morning of that day of the raising, and before the sheds were raised, Mr. Druse came on the premises where I was at work getting ready to raise, and forbade the raising of the sheds, until we performed the contract. He asked me if I was one of the trustees; I told him I was; he forbade me to raise the sheds until we fulfilled the contract." He further says: "George Andrus, one of the defendants, was present when Druse forbid it." Andrus, being sworn, says he was present, and says: "Druse said to Brooks, 'I forbid your raising those sheds until the contract is carried out,' or something to which Brooks answered, 'We have, on our part.'"

Now, it is manifest that the only substantial difference between the testimony on the part of the plaintiff, and that on the part of the defendants, in reference to the forbidding the erection of the sheds, is, that the one states the inhibition as unlimited and entirely unqualified by any reference to the performance of the contract, and the other, that the inhibi-

tion was until the contract should be performed.   Yet all
the testimony on both sides shows, that the contract was
not then, and never has been, performed; and that on the
part of the trustees and defendants, shows directly, and
without qualification that, prior to the time when Druse
forbade the erections, they had deliberately determined never
to perform it.   And Gooding, one of the trustees, says:
"In the spring, before the sheds were raised, we had decided
not to perform the contract we made with Mr. Druse, and
I believe I· did, about that time, tell Harmon Allen, confi-
dentially, that we had taken counsel, and had decided that
it was not best for us to perform the contract, and we
should not do it.   I believe we did not inform Mr. Druse
of our intention not to perform the contract; we made out
a deed for him, but not in accordance with the contract;
we did not quit-claim to him the east half of the northeast
quarter of section twenty-two, as required by the contract."

Under these circumstances, if, as stated by defendants'
witnesses, the inhibition by Druse was, not to erect the sheds
till they had performed the contract, it was just as clear a
revocation of any previous authority to raise, or place them
there, as if he had, as *he* states, forbidden them absolutely,
and without any reference to the performance of the con-
tract.   They knew he had, at least, revoked the license to
place them there, *until* they should *perform* their contract,
and that this revocation would continue to operate unless
they did perform it; and, as they never did perform it, and
never intended to, there was no qualification to the revoca-
tion, which can operate to their benefit; and, in proceeding
as they did, immediately after, to erect the sheds upon his
land, they acted with full knowledge, and in deliberate and
open defiance of his rights.   The evidence on both sides
showing the revocation, being thus clear, and there being
·no evidence in the case tending in any degree to controvert

it, there was no question of fact upon the revocation, in dispute between the parties.

The evidence upon both sides was equally clear and harmonious, that the revocation was made to, and in the presence of, at least one of the trustees; and this was of the same effect as if all had been present.

As to the question of reasonable time to remove the sheds,—or rather the materials before they were raised (for when they were thus erected with full knowledge, in open defiance of the plaintiff's rights, it is at least questionable, whether they could have any right to remove them at all, without his assent). The sheds were raised in April, 1868, not fully completed until the autumn of that year. On the 2d day of July, 1869, plaintiff extended his fence around them so as to bring them within his own enclosure, and on the 5th and 6th July, 1869, the defendants tore down the fence and removed the sheds, in spite of the plaintiff's efforts to prevent the removal. This period, from the forepart of April, 1868, when the license was revoked, until the forepart of July, 1869, when the defendants removed the sheds, was, by the express decision of this court, and in this case, held to have "exceeded any possible term required by reason or necessity to remove them."—*22 Mich., 443*. And as there was no evidence, and is not claimed to have been any, of any attempt to remove, either the materials or the sheds, until July, 1869, there was no question of reasonable time for such removal, to be submitted to the jury.

The fact that the sheds were used after their erection, for nearly fifteen months, without interference by the plaintiff, did not, under the circumstances, tend to show a new license for their erection and maintenance, nor to show that the former revocation had been withdrawn; and the fact was therefore immaterial.

While the jury are to judge of the weight and credi-

bility of evidence properly before them, the question of the *tendency* of evidence to prove or disprove a particular proposition, or whether there is *any* evidence in the case, tending to prove or disprove it, is one of law, to be decided by the court, and cannot properly be referred to the jury. And, when all the evidence upon the point, on both sides, tends clearly to prove, and, if true, does prove a fact, and there is none to cast a doubt upon it, such fact may, and generally should be, *assumed as proved;* and the jury should be told that there is no evidence from which they can find against the fact as proved.

And, under such a state of proofs, a charge which, in effect, tells the jury that it is competent for them to find either way,—for or against the existence of the fact so proved,—is erroneous; as it assumes that there is evidence in the case tending as well to *disprove* such fact, as to *prove it.* Such a charge tends to confuse and mislead the jury, to induce them in their search for such evidence (which the court has thus led them to think must be found somewhere in the case), to give a false or fictitious effect to evidence which has no legitimate bearing upon the point, as well as to encourage them to take the law into their own hands, to determine the tendency and admissibility of evidence, and to adjust the rights of parties according to their own ideas of what the law *ought to be,* instead of adhering to any fixed and definite legal rule.

This is just what the jury appears to have done in the present case; for, while all the evidence on both sides tended to prove beyond question, every point in the plaintiff's case necessary to establish his cause of action, and there was no evidence of a contrary tendency, and the court correctly laid down a rule of damages which entitled the plaintiff to the value of the seventeen sheds, admitted to be worth forty dollars each (making six hundred and eighty dollars),

besides other damages in the case, and the court had stated the principle of law governing the rights of the parties, with great clearness and correctness, the verdict of the jury was for three dollars and fifty cents only.

On looking carefully into the charge as given, in connection with the requests to charge, it is not difficult to see how such a result may have been brought about; for, while the charge was evidently drawn with a view to entire impartiality, yet the very anxiety of the court to avoid apparent partiality, and his extreme caution not to prejudice the case, or take any questions from the jury, seems to have led him to give a charge upon the main points in the case, which would have been eminently correct, clear, and impartial, if the evidence on those points had been conflicting, yet he seems inadvertently to have overlooked the fact, that this same charge, by the very effort to make it so entirely impartial, became partial to the defendants, and injurious to the plaintiff, when applied to evidence which, on both sides, was all one way, and established each of those points in favor of the plaintiff, without any evidence in the case of an opposite tendency. Facts thus proved by the evidence introduced on both sides are practically no more in controversy than if admitted in open court before the jury.

Now, the evidence upon both sides, equally and clearly establishes the following propositions, without any conflict or evidence of an opposite tendency:

*First*, That the only license given to place the sheds upon the plaintiff's land, was a verbal license, given in the fall of 1867, and that the sills were soon after laid;

*Second*, That before the sheds were raised, that license was revoked;

*Third*, That after this revocation the defendants did

proceed to erect the sheds on the plaintiff's land, in the forepart of April, 1868;

*Fourth,* That about the 2d or 3d day of July, 1869, the plaintiff extended his fence around them;

*Fifth,* That about the 6th of the same month, the defendants removed the sheds, against the plaintiff's consent.

Now, in reference to the first two of these propositions, at least (and to some extent some of the others), the charge submitted them to the jury in the same way, in all respects, as if the evidence bearing upon them had been conflicting, and very clearly indicated to the jury, that it was competent for them to find for or against either of those propositions; thus assuming that there was, in his opinion, evidence in the case tending to *disprove* them, when in fact, there was no such evidence.

Thus the plaintiff's second request was, that "the plaintiff's consent to place the sheds on his land being verbal, was revocable at his will, at any time he saw fit." This was refused, and in lieu of it, the court charged in this modified form: "*If you find from the evidence* in the case that the consent of the plaintiff to place the sheds on his land was merely verbal, it was revocable at his will." This was throwing doubt upon the fact equally established by the evidence on both sides, that the license was merely verbal. It naturally left the jury to draw some loose inference, that the written contract given in evidence might, in the opinion of the court, operate in some way as a license to enter, or to place the sills or the sheds or materials there, notwithstanding the court told them in other parts of the charge, that it did not give them any right of possession, or to continue in the possession, and that the right of possession must depend upon the verbal license. The jury knew this was the only writing given in evidence which

could possibly be claimed to give any thing but a verbal license. The request to charge was, therefore, right in assuming that the only license the evidence tended to show, was a verbal license; and the refusal of the court to give it was erroneous in throwing doubt upon it, and in assuming that there was evidence from which the jury might find that the license was by deed or in writing.

Again, as to the question of revocation, a similar error was committed in refusing the plaintiff's third and fourth requests, which were, in substance, that, if the jury believed the testimony of defendant, Brooks, on the one hand, or that of plaintiff and William Druse on the other, the superstructure above the sills was erected after the previous license had been revoked by Druse, etc., etc., and the plaintiff was entitled to recover, etc.

Both these requests were right in principle on this point.—See *Mining Co. v. Brady, 16 Mich, 332.* (The fourth request was more limited as to damages than the plaintiff was entitled to).

These requests were refused; and upon the question of revocation, the charge, in effect, told the jury that it was competent, from the evidence, to find that there was not a revocation before the sheds were erected; when there was no evidence in the case upon which the negative could be found; and they were left to base their verdict upon some wrong view of the evidence, or upon some imaginary ground of law or fact which could never be known.

Again, the court says, "I leave it to you to say whether this license, claimed to have been given, was revoked or not; and if you find that the license was given, and had not been revoked, then the defendants had a right to enter on the land and remove the sheds, doing no unnecessary damage," etc. From what evidence were they to find it had

not been revoked, when both parties equally had proved that it was revoked, and the revocation was as clearly established as if the defendants had admitted it in court? This was erroneous, and falls directly within the decision of this court, in *Hewitt v. Begole, 22 Mich., 33.*

A similar error was committed upon the question, whether the revocation was made to, or brought to the knowledge of, the trustees, when the evidence on both sides equally showed that it was made and declared by the plaintiff at least to one of the trustees, who was also the contractor to do the work; and notice to one of the trustees was, in law, notice to all.

There was also error in submitting to the jury the question of reasonable time to remove the sills, after the license was revoked. In the first place, by erecting the sheds upon the sills after the license was terminated, and in known and open defiance of the owner's rights, the defendants had, as it seems to me, lost all right to remove the sills which thus, by their own wrongful act, had become a part of the sheds, and as the court, I think correctly, intimated, the sheds (entire) were the property of the plaintiff. But waiving this, and admitting that the defendants might still have had a reasonable time to remove the sills, the decision of this court, when the case was formerly before us, had settled that question, and declared that the period between the forepart of April, 1868, and the 6th of July, 1869, exceeded any possible term required by reason or necessity.

This principle was asserted in the plaintiff's fifth request, which was refused.

The question of reasonable time may sometimes be peculiarly a proper one for the jury. But when the court can clearly see, from the nature of the case, that the time

exceeds any possible term required by convenience or necessity, as in this case, it should so determine, and so instruct the jury.

Under a proper charge, there was practically little for the jury to do in this case, but to assess the damages; and the value of the sheds being admitted, they were bound by that amount as the value of the sheds, and the other damages claimed in the case, were all that remained in controversy upon the evidence.

The judgment must be reversed; with costs, and a new trial awarded.

The other Justices concurred.