EDEN D. HUFF, APPELLEE, v. GRAND LODGE, BROTHERHOOD
OF RAILROAD TRAINMEN, APPELLANT.

FILED MARCH 13, 1915.   No. 18,029.

1. **Insurance:** CONTRACT: LIMITATION OF LIABILITY.   Section 68 of the
constitution of the defendant association, of which plaintiff was a
member, provides for indemnity upon claims for total disability
resulting from certain specified injuries. Another section provides
that all claims for disability not coming within the terms of sec-
tion 68 should be held to be addressed to the systematic benevo-
lence of the order, and should in no case be made the basis of
any legal liability on its part. *Held,* That the contract limiting
the liability of the association to the disabilities described in
section 68 is a valid contract; that such an association may limit
the class of risks which it will assume, and that the defendant
is not bound to pay claims other than those which it specifically
agreed to pay by the terms of the certificate and constitution.

2. ————: BENEFICIAL ASSOCIATION: BENEVOLENCE.   It is not against
public policy for the members of such an association to agree with
each other that a portion of the funds which they contribute may
be applied to the relief of members for whose injuries or disabili-
ties no legal liability exists against the association. The mere
fact that the objects of this benevolence are to be selected by a
beneficiary board does not alter the situation nor create an obliga-
tion on the part of the association to pay all claims for total disa-
bility arising from causes not covered by the insurance contract.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE.   *Reversed and dismissed.*

*Lincoln Frost* and *Walter L. Pope,* for appellant.

*W. B. Price, Ray J. Abbott* and *A. E. Howard, contra.*

LETTON, J.

This action was brought in the lifetime of the plaintiff,
Eden D. Huff.   A judgment was rendered in his favor in
the district court.   After the case came here on appeal his
death was suggested, and the cause revived in the name of
his administrator.   The action is based upon a beneficiary

certificate issued by the defendant, a fraternal beneficiary association.

The petition alleges that Huff was a member of the association; that on or about the 8th day of October, 1910, he became totally disabled by reason of paralysis, and is now totally disabled, and entitled to the benefits of the beneficiary contract; that "the grand lodge has established and maintained various funds as follows: A general fund, a beneficiary fund, a beneficiary reserve fund, a protective fund, and a convention fund—and that a part of the assessments which this plaintiff has paid to the grand lodge has been segregated in said funds, and that he is entitled to the benefits by reason thereof, and that that portion of the constitution and general rules of said Brotherhood of Railroad Trainmen which reads as follows: 'And shall in no case be made the basis of any legal liability on the part of the brotherhood'—is null and void, for the reason that it is against public policy and contrary to law;" that due and proper proofs of his disability have been furnished as provided for in the general rules and constitution by the defendant; that he has promptly and regularly paid all dues, fines and assessments, but that defendant refuses to pay him the benefits provided for in the constitution and general rules. A general demurrer to the petition was filed, which was overruled. Defendant elected to stand upon the demurrer and not plead further. The court found for plaintiff and entered judgment for $1,500, the full amount of the certificate. A copy of the certificate and of the constitution and general rules of the order was attached to the petition and made a part of it.

The beneficiary certificate sets forth that the plaintiff "is entitled to all the rights, privileges and benefits of membership and to participate in the beneficiary department, class C of said brotherhood, to the amount set forth in the constitution thereof, which amount, in the event of his total and permanent disability, as defined in section 68 of the constitution, shall be paid to him, or at his death shall be paid to Addie Huff, his wife, if living."

97 Neb. 54

Section 60 provides in part: "There shall be three classes of beneficiary certificates, namely, Class A, $500; Class B, $1,000; Class C, $1,500. Each class shall be evidenced by a beneficiary certificate to be issued under the hands of the president and general secretary and treasurer, and in the name and under the seal of the grand lodge. Each certificate shall show in which class it is issued, and provide for the payment, in accordance with this constitution, of the full amount of such class upon the death of the member insured therein, or upon his becoming totally and permanently disabled within the meaning of section 68."

Section 68 provides: "Any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand at or above the wrist joint, or who shall suffer the amputation or severance of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of both eyes, shall be considered totally and permanently disabled, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate, but not otherwise."

Section 69 provides for the manner in which proof of total disability shall be made and acted upon.

Section 70 is as follows: "All claims for disability not coming within the provision of section 68 shall be held to be addressed to the systematic benevolence of the brotherhood, and shall in no case be made the basis of any legal liability on the part of the brotherhood. Every such claim shall be referred to the beneficiary board, composed of the president, assistant president, and general secretary and treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant, and, if approved by said board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancelation of such certificate; provided that the approval of said board shall be required as a condition precedent to the right of any such claimant to bene-

fits hereunder, and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims. No appeal shall be allowed from the action of said board in any case; but the general secretary and treasurer shall report all disapproved claims made under this section to the board of insurance at its next annual meeting for such disposition as such board of insurance shall deem just and proper."

Section 71 provides for the manner in which proof of benevolent claims made under section 70 shall be made, which differs from that under section 68.

The appellant contends that the insurance contract as contained in the certificate, the constitution and the by-laws does not cover or include a disability of the nature described in the petition; that the certificate indemnifies only for and against death and permanent disabilities of the nature described in section 68, and that since the disability of the insured was not within the provisions of that section, no liability exists. It also contends that the provisions by which claims for disability not coming within the provisions of that section shall be considered as addressed to the systematic benevolence of the brotherhood and may be considered by the beneficiary board is a valid agreement; that as to this class of claimants there is no fixed and binding obligation resting upon the society. On the other hand, the appellee insists that "the order has no inherent power of itself to deny its members the privileges and benefits prescribed by the general rules and laws governing it; that is to say, when a member does all the things which are required of him to be done, then they cannot deny the things which they promised to do and for which the member has paid his money." The appellee also contends that the portion of section 70 (which refers only to disabilities not mentioned in section 68) which provides "that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claims," is void as against public policy.

In the view we take of this case, it is unnecessary to consider the latter contention. The crucial question is whether it was within the power of the parties to the insurance contract to make an agreement of this nature. In substance the contract is that, in consideration of the payment of certain assessments, the society will pay to the beneficiary, in case of death of the insured, or to the insured, if he "shall suffer the amputation or severance of an entire hand at or above the wrist joint, or * * * of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of both eyes, * * * *but not otherwise,"* the sum of $1,500. This. is an absolute obligation covering death, and certain specific injuries. These alone are the injuries for which indemnity is definitely provided and which there is a legal duty to pay. Such a contract is valid under the statute of this state which was in effect at the time the contract was made, and in the absence of proof it must be presumed that the statutes of the state of Ohio, where the association is organized, and of the state of Kansas, where the contract was made, are in nowise different. It was argued that the association has no power to provide that claims not falling under the provisions of section 68 may be paid, if approved by the beneficiary board, and that consequently all cases of total disability of whatever nature must be paid. This is a *non sequitur*. The argument goes too far. If the board has no power to distinguish and exclude claims for disabilities other than those described in section 68, it can only be because the society has no power to limit the risks it will carry to disabilities arising from the injuries included in that section. It is obvious that this cannot be the law. To so hold would prevent an association from classifying and limiting the risks which it will contract to indemnify against. The statutes permit and provide for such classification, and the contract here is not invalid.

We find nothing in the statutes or in the constitution and by-laws to prevent the members of this association from agreeing with each other that a portion of the funds

which they contribute may be applied to the relief of members for whose injuries no legal liability exists but for whose distressful situation a fraternal feeling might justify relief. The mere fact that the objects of this benevolence are to be selected by a special board from among the members is not important. Many benevolences are created by the contributions of many individuals to a benevolent fund, which it is agreed, either expressly or impliedly, shall be disbursed by a board or committee to whom applications for relief are made. *Pool v. Brotherhood of Railway Trainmen*, 143 Cal. 650.

Deceased became a member knowing the limitations of the insurance contract. It has not been changed since he became a member, and he, as well as all other members, became bound by the mutual agreement. The disability upon which the action is based is not embraced within the provisions of the contract.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

ROSE, J., not sitting.

FAWCETT, J., dissenting.