## Darnell v. Equity Life Insurance Company's Receivers.

(Decided February 22, 1918.)

### Appeal from Franklin Circuit Court.

1. Insurance—Organization of Company—Policy Contract.—A member of a co-operative or assessment life insurance company can not plead an irregularity in its organization, or that his policy is an ultra vires contract, to defeat a cause of action against him by the company or its receiver.

2. Insurance—Co-operative or Assessment Company.—The members of a co-operative or assessment life insurance company may, by its by-laws and policy contract, limit the extent of the co-operation, when such limitation is not contrary to the statutes under which they are organized.

3. Insurance—Assessment to Pay Indebtedness.—A life or casualty

insurance company organized to make the insurance transaction contemplated by section 664 and 665, Kentucky Statutes, under the provisions of subdivision 3, of article IV., of chapter 32, Kentucky Statutes, and which has nothing in its articles of incorporation, by-laws, nor policy contract, by which one policyholder is made liable for the losses of the company under the policies of other members, and where it is expressly provided in the by-laws and policy contracts, that no liability is assumed by a member, other than a stated annual premium provided for in the policy, is without authority to levy an additional assessment upon its policyholders to pay indebtedness of the company

LAWRENCE S. LEOPOLD, J. P. HOBSON & SON, SCOTT & HAMILTON, CHARLES CARROLL, CLEMENTS & CLEMENTS and J. W. CAMMACK for appellant.

GUY H. BRIGGS, LESLIE W. MORRIS and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was instituted, in the Franklin circuit court, by the Insurance Commissioner, against the Equity Life Insurance Company, to enjoin it from further transaction of business, and to secure the appointment of a receiver to take possession of the property and effects of the company and to wind up and settle its affairs. The grounds, relied upon for seeking the relief asked, were, that it was a domestic insurance company; was insolvent; had exceeded its powers; failed to comply with the law; and that its, further, proceedings were hazardous to the public and its policyholders. The injunction was granted and a receiver appointed, as prayed for. The receiver was directed to take into his possession all moneys, books, and papers and property and assets of the company, generally; to collect all debts due the company; to ascertain its indebtedness, its policyholders, and the amount of each policy, and to fully report to the court all of its assets and liabilities. The report required was filed in court on April 13th, 1916, and showed that the company commenced to do business in October, 1909, and continued until the 7th day of December, 1914, the time of the granting of the injunction and the appointing of a receiver, and that the company owed debts for services rendered it, rent and other items, in the sum of $6,208.65, and death claims in

the sum of $79,889.40. Since the filing of the report, two other death claims have been presented, amounting to $10,000.00, making a debt of the total sum of $96,-098.05. The mortuary and reserve fund on hand amounted to the sum of $594.34, leaving a net indebtedness of $95,503.71. The total sum for which the policyholders held insurance, which was represented by subsisting policies in force, at the time the receiver was appointed, was the sum of $906,000.00. The receiver reported, that in order to secure a sufficient sum to pay the indebtedness, it would be necessary to make an assessment upon each policyholder of an amount equal to 10.02 per centum, of the amount, for which he carried insurance, which was then in force. Under the directions of the court, the receiver made the assessment. The policyholders having failed to pay the sums demanded of them, the receiver filed an answer, in the action, which was made a cross-petition against the various policyholders, and by which a personal judgment was sought against each policyholder for the amount for which he was assessed. A copy of the policy held by the appellant, Darnell; a copy of the articles of incorporation of the company; its by-laws; the license granted to the company by the Insurance Commissioner to do business; and the report of the receiver, and the notice of the proposed assessment were filed with and made a part of the answer and cross-petition. The appellant, Darnell, was made one of the defendants to the cross-petition, as being a policyholder, at the time, the various items of indebtedness, which went to make up the indebtedness of the company, were incurred. To the cross-petition against him, he interposed a general demurrer. The demurrer was overruled and declining to, further, plead, a judgment was rendered against him, in behalf of the receiver, for the sum of $510.00, the amount of the assessment against him, and complaining of this judgment, he has appealed. The main question for decision, under the pleadings, is whether or not the cross-petition stated facts sufficient to authorize the court to direct the receiver to make the assessment, and whether or not the appellant, as a policyholder, could be required to pay the assessment, conceding that the assessment was made in the manner required by law. The decision of this question makes necessary a consideration of the

character of the corporation it was; the character of business it was engaged in, and the rights and liabilities of a policyholder in it, under the statutes controlling such corporations; the by-laws and the contract with appellant, as set out in the policy held by him, as the liabilities of a member of some insurance corporations are different from his liabilities as a policyholder. It is apparent, that, if appellant can be required to pay the judgment, that he will be loser, not only of the sums he has paid in premiums to the company, but the value of his policy, also, if it has any such, and in spite of these losses, he will be required to pay or assist in the payment of all the indebtedness of the company, in cases of the death of other policyholders, previous to the filing of the action, in which the judgment declaring the insolvency of the company was rendered, or at least all of those on account of which the assessment was made, as the cross-petition alleges that appellant's policy was in force when each of the losses was incurred.

The articles of incorporation represent, that the incorporators have "constituted themselves and their associates a corporation, for the purpose of transacting a life insurance business, on the co-operative or assessment plan, pursuant to the provisions of chapter 32, of Kentucky Statutes, and especially pursuant to article IV, subdivision 3, thereof." Article II declares that "the class of insurance which it is proposed to write is known as the co-operative or assessment plan."

Article III provides as follows:

"The business plan or principle on which the corporation proposes to operate is the creation of a fund or funds derived from stated annual premiums, special assessments, as occasion may require, and interest and accretions thereon, collected or to be collected from the policyholders thereof, said fund to be used to make and maintain insurance on the lives of individuals, who have by payment of stipulated premiums become policyholders in the corporation. The corporation shall create a reserve fund in such a manner as may be prescribed by the by-laws of the corporation, which reserve fund shall be set apart as an emergency fund and used as prescribed in section 662, subdivision 3, and article IV, of Kentucky Statutes."

Article IV provides, that the number of policyholders should be at least two hundred in number and the aggregate amount of insurance not less than $200,000.00. The other articles provided for a board of directors and officers, and when the corporation should commence business, and authorized the directors to employ persons to serve the corporation, and to create a finance and other committees, and limited the amount of the indebtedness, which might be incurred, except for death claims, and provided by article XI, that the private property of the members of the corporation should not be subject to the payment of the corporation's debts.

Section 664, Kentucky Statutes, defines certain characters of insurance, which shall be considered as life insurance upon the co-operative or assessment plan, and is as follows:

"Any corporation, association or society which issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the decease of a member, any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society, to the legal representative of such member, or to the beneficiary designated by such member, which money, benefit, charity, relief or aid is derived from the voluntary donation or from admission fees, dues and assessments, or any of them, collected or to be collected from the members thereof, or members of a class therein, and interests and accretions thereon, or rebates from amounts payable to the beneficiaries or heirs, and wherein the paying, providing or rendering of such money or other benefit, charity, relief or aid is conditional upon the same being realized in the manner aforesaid, and wherein the money or other benefit, charity, relief or aid so realized is applied to the uses and purposes of such corporation, association or society, and the expenses of the management and prosecution of its business, shall be deemed to be engaged in the business of life insurance upon the co-operative or assessment plan, and shall be subject only to the provisions of this subdivision. . . ."

Section 665, Kentucky Statutes, defines in similar language what casualty insurance upon the co-operative or assessment plan is.

The policy in controversy was a joint policy, in favor of the appellant and his wife and the consideration of which, as expressed in the policy, was as follows:

"This policy is issued in consideration of the applications therefor, and of the applicant's statements made in their medical examinations, and of a full compliance with all the terms, conditions and provisions endorsed on the back of this policy, all of which are made a part hereof, and of the payment, in advance, of fifty-five dollars for one year's insurance, but will be renewed upon the further payment of a like amount at the home office of the company on or before the 9th day of December in every year thereafter, during the continuance of this contract."

The above was contained in the face of the policy. The undertaking by the company was, in the event of the death of either appellant or his wife, to pay to the survivor, a funeral benefit of $250.00, and to the survivor, if the wife, 38.00, per month, during her natural life, and if the husband, the sum of $28.00 each month during his natural life, and in the event of the death of both, if the premiums upon the policy had been paid up to the death of both, to pay any minor children, which they might have, the monthly benefit being paid to the surviving husband or wife, whichever was the last to die, until the children should become twenty-one years of age or married. If the husband or wife should become permanently disabled during the continuance of the contract, to pay to him or her the monthly benefit above mentioned; if the husband, $28.00, and if the wife, $38.00, per month during the period of the disability, and if both should become disabled, to pay to them during the continuance of the disability the sum of $28.00 per month. But all of the payments under the policy should not exceed $5,000.00.

The by-laws were made a part of the policy contract and printed upon the back of the policy. The eighth by-law provided, that one-half of each premium after the first, should be appropriated, as a mortuary fund, and not used for any purpose, except the payment of death claims. The ninth by-law provided, that at the end of each fiscal year, after all current expenses, commissions, etc., were paid, and one-half of the premiums collected appropriated to the mortuary fund, if any money was on hand, it should be appropriated to a reserve fund and

invested in securities, as required by law, and held inviolable for the payment of death claims, in the event the mortuary fund should become exhausted.

The tenth by-law was as follows:

"In case an emergency shall arise from an epidemic, or other causes, and our mortuary and reserve funds shall both become exhausted, leaving any unpaid death claims, then the company reserves the right to call on her policyholders for a special donation, sufficient only to relieve such unpaid death claims. But under no circumstances shall any such donation be called for until our mortuary and reserve funds have both been completely exhausted. In such case sixty days' notice will be given to all policyholders of the amount called for and of the time it shall be due."

This by-law was followed immediately by the eleventh one, which was as follows:

"In accepting a policy in this company, you assume no liability whatever, further, than the payment of the first year's premium, and no property or other value of the policyholder shall be held liable for the payment of the premiums, except where notes have been given for the same."

Another by-law provided, that a lapsed policy might be renewed within a year from the date of its lapse by furnishing satisfactory proof of good health and the payment of all back premiums, with their accrued interest.

(1). It is insisted, that the policy contract sued upon is void, because the Equity Life Insurance Company was not organized as required by law, as a co-operative or assessment life insurance company, and hence did not have the power to make or enter into a contract, such as the policy was, which was granted to appellant. The failure to organize, as required by law, as an assessment life insurance company, is said to consist in the fact, that only two of the persons claiming to be incorporators signed and acknowledged the articles of incorporation, as required by section 619, Kentucky Statutes; a sworn statement was not made by three of the incorporators to the effect, that, at least two hundred eligible persons had, in good faith, made application, in writing, for membership in the company and was not filed with the Insurance Commissioner; that the papers were not referred to the attorney general for his examination, and

he did not certify, that they were in conformity with the requirements of the law; that at least two hundred persons did not subscribe in writing for an aggregate amount of $200,000.00 of insurance and pay in five per centum of the amount subscribed, and which was invested in securities and deposited with the treasurer, in trust for the beneficiaries, and the emergency fund provided for by section 662, Kentucky Statutes, had not been deposited, and that its license was not filed in the county court of the county where its office was to be located before it commenced to do business, all of which things were required to be done by section 661, Kentucky Statutes, before it was authorized to engage in business as a life insurance company upon the co-operative or assessment plan. As to the first fault found with the organization, section 660, Kentucky Statutes, does not require, in the organization of an assessment or co-operative life insurance company, any particular number of persons to become incorporators, and with reference to the failure, of the incorporators to do the other things required for the legal organization of such a corporation, as are complained of, does not appear in the record, but the certificate of the Insurance Commissioner is on file and made a part of the cross-petition, in which it is certified that the proceedings were regular and in compliance with the law by the incorporators, and that in consequence of which, the commissioner had granted the certificate or license. The demurrer necessarily confesses the truth of the averments of the petition, and it can only be presumed, that the certificate of the commissioner contained a truthful statement, in the absence of any fact in the petition, which shows otherwise. It is insisted, however, that the contract of insurance is not one upon the co-operative or assessment plan of life insurance, and hence is *ultra vires,* because the company was without power to make such a contract, and its action was unlawful, because contrary to the provisions of section 567, Kentucky Statutes, which makes it unlawful for a corporation to engage in any business, other than what is expressly authorized by its articles of incorporation, or to engage in the business of insurance without having been organized in accordance with law. An examination of the policy, however, does not show that the contract contained therein was either vicious or illegal; but that it was such a contract, as might be lawfully made by

authorized persons, and appellant having been a policyholder and member, which is a status, in an assessment life insurance company, in the nature of a quasi stockholder, is estopped to insist upon irregularities in the organization of the corporation, or that the policy was an *ultra vires* act, as a defense to the action. Section 566, Kentucky Statutes; Wight v. Shelby R. R. Co., 16 B. M. 5; H. & N. R. R. Co. v. Leavell, 16 B. M. 359; Wood v. Friendship Lodge, 106 Ky. 424; Lail v. Mt. Sterling Road Co., 13 Bush 33; Johnson v. Mason Lodge, 106 Ky. 838; Calor Oil & Gas Co. v. Franzell, etc., 128 Ky. 715; H-B Fire Insurance Co. v. O. V. D. G. Co.'s Trustee, 160 Ky. 252; Depew v. Bank, etc., 1 J. J. M. 378; Bank, etc. v. Trimble, 6 B. M. 599; Jones, etc. v. Bank, etc., 8 B. M. 123.

(2). It is, also urged, that the Equity Life Insurance Company was not a mutual company, and for that reason, there being no mutuality of obligation between the policyholders, that one policyholder could not be assessed for the payment of a loss under another policy. It seems to be the policy of the law, in this state, that insurance companies shall indicate by their names and in their policies whether they are stock or mutual companies, as it is required by section 618, Kentucky Statutes, that an insurance company, which does business upon the mutual principle must include the word, "mutual," in its name, and by section 686, Kentucky Statutes, it is provided, that every insurance company doing business upon the mutual plan must include the word, "mutual," in its title, and that such title shall appear upon the first page of every policy and renewal receipt, and if it is a cash stock company, that it shall express in its policies, that it is a stock company nor shall any company transact the business of insurance on both the stock and mutual plans. Section 686, *supra,* however, seems to apply to insurance companies, other than life insurance companies. The word, "mutual," does not appear in the title of the Equity Life Insurance Company, and no mutual principle appears anywhere in the policy sued on, unless the tenth by-law should be considered as a mutual undertaking by all the policyholders to be ultimately bound for the losses sustained under all other policies. To co-operate means for one or more persons to act jointly or concurrently toward a common end, but, as applied to a co-operative or assessment insurance company, does not include a co-

operation beyond the terms of a contract entered into between the co-operators. In the instant case, it is not deemed necessary to decide whether a co-operative insurance company and an assessment insurance company are necessarily one and the same, nor what effect the failure to incorporate the word, "mutual," in the name of the insurance company conducted upon the mutual principle, has upon the liabilities of a policyholder therein, who has accepted a policy and carried it until liability of a mutual character is about to be imposed upon him, as there is no requirement in the statutes, which regulate life or casualty insurance companies, that they shall be conducted upon the principle of mutuality of obligation between the policyholders for each others losses, and in this they are in marked contrast with fire insurance companies, which are conducted upon the co-operative or assessment plan, as by section 707, Kentucky Statutes, the policyholders, in the latter companies, are expressly required to enter into a mutual undertaking to pay each his pro rata of losses suffered by other holders of policies. The articles of incorporation of the Equity Life Insurance Company provide for a company to do business as a co-operative or assessment company, as provided in the statute upon the subject. Its only revenues are to be realized from annual premiums, which might be considered dues, special assessments, and the interest and accretions thereon, collected or to be collected from the policyholders. The policy of appellant is an undertaking to insure against risks and to pay benefits, which, by the provisions of the statutes, are such as may be done by co-operative or assessment companies. The articles of incorporation do not provide, that there shall be any obligation between the policyholders to satisfy the losses sustained under each others policies or any obligation to each other at all, or to any one other than the company. Section 667, Kentucky Statutes, authorized the policyholders to make and adopt by-laws, and if a by-law had been adopted authorizing an assessment upon a policyholder and requiring from him a payment of his just pro rata of the just debts and expenses of the corporation, previous to the issual to him of a policy, and such had been made a part of the contract as a member of a co-operative assessment life insurance company, it seems that there would be no reason, why he should not be bound thereby. The policyholders, however, in making the by-

laws, have the right to define the extent to which they would co-operate with each other in carrying out the common purpose, and each could be bound no further than the by-laws and policy contract provided. The policy, with the by-laws, constitutes the contract, and defines the liabilities of the appellant, to the company and its members. The policy, so far as it provides for an undertaking by the insured to the corporation, is the same as the liability of a policyholder in a regular line life insurance policy. It provides for the payment, in advance, of a fixed and unalterable premium, and for renewal of the insurance when the stated premium shall be paid at the beginning of another insurance year. The undertaking of the company as to the amounts, to be paid by it upon the contingencies insured against, are uncertain, in total amounts, except the death benefit, and that the aggregate amount to be paid should not be in excess of $5,000.00. The face of the policy contains a contract, from which the insured could withdraw, at any time, by refusing to renew it, by the payment of the fixed premium at the fixed time, and no further liability would attach to him. Bacon on Benefit Societies, section 357; Lehman v. Clarke, 43 L. R. A. 648. There is not the slightest hint of any further or greater liability than the payment of the flat premium, in the policy proper. By the eleventh by-law, it is expressly and as plainly as language can be written, provided, that in accepting a policy, the policyholder does not assume any liability whatever, further, than the payment of the first year's premium, and that no property or other value of the policyholder shall be held liable for the payment of premiums, except where notes have been given for the same. The eleventh section of the articles of incorporation provides, that the private property of the members of this corporation shall not be subject to the payment of corporate debts. While the articles of incorporation provide, that certain income of the company may be realized from "special assessments," no authority was bestowed upon any one to levy the assessment, nor a right given to any one to require the assessment to be made and of course, an assessment being otherwise unprovided for, would not be collectible, from one member for the benefit of the company, or any other member, in direct violation of the contract of the member and corporation, as expressed in the by-laws and policy. The by-laws contain no provision for the levy of an assess-

ment nor for the enforced payment of any liability beyond the first year's premium, fixed in the policy. The policy makes no provision for an assessment. The only provision for the payment by a policyholder, under his contract, of anything further than the first year's premium upon his policy is contained in the tenth by-law. Reading the provisions of the policy and the eleventh by-law together, a contract would exist, which would be binding upon the company; if the policyholder paid the premium, at the stated time, but which he might decline to do at the end of any premium year without incurring further liability. The eleventh by-law provides, that the company reserves the right to "call on the policyholders for a 'special donation' in case of emergency from an epidemic or other cause, that will cause the mortuary or reserve funds to become exhausted, and leave any unpaid death claims." It is insisted, that this language should be construed into a right on the part of the company to levy an assessment, under such circumstances, against the policyholders, and that it created a liability upon them to pay the assessment levied. It is difficult to understand why, if the makers of the by-laws, intended that such should be the effect of that provision that they did not say so. It was probably contemplated by the makers of the by-laws, that the contingency to which the tenth by-law applies was so remote, that the provision it provides to meet the contingency, although in practical operation, would be doubtless very unsatisfactory, was deemed to be sufficient. If the tenth by-law is to be construed as empowering the officers or directors of the company to levy an assessment upon a policyholder, which would be a liability upon him, that was capable of enforcement, it would be in direct conflict with the provisions of the tenth by-law, which provides as above stated that an acceptance of a policy in the company imposes no liability upon the holder, except the premium for the first year, and that the property of a policyholder could not be subjected to the payment of a premium, unless he had executed a note for it. If the two by-laws are construed according to the common and accepted import of the language used, their provisions are relieved of any contradiction or inconsistency. Their language is not ambiguous, and it can be assumed that the word, "donation," was not unadvisedly used in drafting the by-laws, by persons unlearned or not expert in insurance contracts

and who failed to comprehend the meaning, force and effect of the words, as by-laws for an insurance company are ordinarily prepared and adopted by educated persons and with the assistance of counsel. Hence, it can only be concluded, that the by-laws mean what they say and say what they are intended to mean. A "donation" has no other meaning than a voluntary contribution or gift, which one may make or refuse to make, as he may elect. This must be regarded as its meaning in by-law ten, in the light of the provisions of section eleven of the articles of incorporation, and the eleventh by-law and the policy itself, with all of which it would be inconsistent if any other meaning is given to it. Many benefit societies are conducted, at least in part, by voluntary donations and contributions and the statute, section 664, *supra,* provides that voluntary donations may be one of the sources of income of a life insurance company upon the co-operative or assessment plan. It is clear that the tenth by-law was adopted to preserve for the company some semblance of a co-operative or assessment company, such as is contemplated by the statutes upon the subject, but not to impose any enforcible liability upon the policyholders or members. The Equity Life Insurance Company having nothing in either its articles of incorporation, by-laws or policy contracts, which made a member or policyholder liable to any other member or policyholder for a loss sustained by the company on account of the policy of any member, and having never by by-law or contract provided for a liability upon any of its members or policyholders for its debts to its other policyholders, but expressly provided by its by-laws that no such liability could be imposed upon its members, beyond the premiums to be paid upon the policies, and thus expressly limited the co-operation of its members, which was known to and accepted by its members and policyholders, it was without power to levy an assessment, and doubtless this was the reason it never atempted to do so. The company, itself, being without power to do so, its receiver can not do so, nor can the court authorize him to do so.

The judgment is therefore reversed and the cause remanded for proceedings consistent with this opinion.