**Bernice STALEY, Respondent,**

**v.**

**Carl PADDOCK and R. R. Price, individually and as members of a class known as Local No. 587, Taxicab, Produce Employees, Ambulance and Funeral Drivers, I. B. T. C. W. & H. of A., Appellants.**

**No. 22604.**

Kansas City Court of Appeals.

Missouri.

May 6, 1957.

John J. Manning, Robert S. Fousek, Kansas City, for appellants.

Austin F. Shute, Keith Martin, Kansas City, for respondent.

BROADDUS, Presiding Judge.

This action was instituted by plaintiff, Bernice Staley, against Carl Paddock and R. R. Price, as representatives of a class known as Local 587, Taxicab, Produce Employees, Ambulance and Funeral Drivers, I.B.T.C.W. & H., hereinafter referred to as the Union, a labor organization. Plaintiff is the widow of Glen Staley.

Her petition alleges that, as the surviving spouse of Glen Staley, she is entitled to receive from the Union a death benefit of $200.

The facts are not in dispute. Glen Staley became a member of the Union February 14, 1952. Under the Union's Constitution and By-laws monthly dues in the amount of $3 are due and payable on or before the first day of the current month in advance. On January 25, 1954, plaintiff, Staley's wife, on his behalf, paid his delinquent dues for the months of October, November, December, 1953, and January and February, 1954. On March 3, 1954, she paid his dues for March, 1954. Staley died March 4, 1954. He became ill and was taken to a hospital on December 7, 1953.

Article VIII of the Union's Constitution and By-laws provides for death donations under certain circumstances. The pertinent portions of said article are as follows:

"Rules Governing Death Donations

Article VIII

"This death Fund is purely voluntary. The benefits extended to members of Local Union 587 are a pure and voluntary donation by the Local Union, provided that the member has complied with the following rules governing same. But under no consideration should this article be construed to mean that a member is paying any dues directly into this fund, or that any part of his dues are taken as payment of premium for this donation. All members' death certificates for death donations will come before the Local Executive Board for passage for approval. In the event that technicalities arise and the Local Executive Board does not deem it advisable to approve a donation, same will be taken up with the Local Union for their approval, who will decide by a two-thirds majority vote of the members present, and this action will be final and bind-

ing. The Local Union and the Executive Board will be governed by the following rules:

"Section 1. A death donation will be donated to all regular dues paying members of Local Union No. 587 after holding membership in Local Union No. 587, for six (6) consecutive months in good standing after becoming a member by paying initiation fee, transfer card, returning on a withdrawal card or reinstatement.

"Section 2. Members who either (a) take sick or (b) owing dues for the previous month, shall be barred from receipt of any donations.

\*   \*   \*   \*   \*   \*

"Section 4. In case of death, the office must be notified at once, either in person or in writing, and a death certificate must be furnished to Local Union No. 587.

"Section 5. At the death of a member who has been a dues paying member for six months (inclusive) from the time of initiation, depositing of withdrawal card, transferring in, or is reinstated and is in good standing at the time of death, the Local Union shall make a donation of $200.00."

It is admitted that: "Plaintiff notified the Union and took the action necessary under Article VIII, Section 4," and that: "The Local Executive Board of the Union did not approve the donation and the question of giving the donation was submitted to the membership of the Union. The membership voted by a two-thirds majority not to give the donation to plaintiff." Thereupon this action was instituted, resulting in a judgment in plaintiff's favor. Defendants have appealed.

Defendants' contention is that the Court "erred in failing to find that the Union's Constitution and By-Laws providing for death donations constituted simply an authorization to the Executive Board of the Union to make voluntary contributions and did not create any enforceable obligation upon the Union."

■ In our opinion, the contention is well taken. It is to be noted that the above quoted Article specifically states that: "This Death Fund is purely voluntary. The benefits \* \* \* are a pure and voluntary donation by the Local Union; \* \* \* under no consideration should this article be construed to mean that a member is paying any dues directly into this fund, or that any part of his dues are taken as payment of premium for this donation."

The overwhelming weight of authority in this country supports the proposition that a by-law provision such as is here involved, which merely authorizes the payment of charitable donations to members of an association under stipulated circumstances, does not constitute a legal obligation to pay such donations. Grand Lodge, Brotherhood of Railroad Trainmen v. Smith, 129 Miss. 738, 92 So. 837, 27 A.L.R. 863; Grand Lodge, Brotherhood of Railroad Trainmen v. Nolan, 196 Ky. 296, 244 S.W. 759; Huff v. Grand Lodge, etc., 97 Neb. 848, 151 N.W. 979; Brotherhood of Ry. Trainmen v. Powers, 260 Ky. 810, 86 S.W. 2d 1001; Kelly v. Brotherhood of Railroad Trainmen, 308 Ill. 508, 140 N.E. 5, 29 A. L.R. 243; Loos v. Brotherhood of Railroad Trainmen, 102 Ind.App. 693, 2 N.E.2d 244.

■ And as was said in the Case of Darnell v. Equity Life Ins. Co.'s Receivers, 179 Ky. 465, 200 S.W. 967, 972: "A 'donation' has no other meanings than a voluntary contribution or gift, *which one may make or refuse to make, as he may elect.*" (Emphasis ours.) The real reason why one may make or refuse to make it, as he sees fit, is that it lacks the essential element of an enforceable contract, namely, consideration.

The judgment is reversed.

All concur.